**In re The JUSTICES OF the SUPREME COURT OF PUERTO RICO, Petitioners.**

**In re COLEGIO DE ABOGADOS DE PUERTO RICO, and Fundacion Colegio De Abogados, Petitioners.**

Nos. 82–1538, 82–1573.

United States Court of Appeals, First Circuit.

Argued Sept. 15, 1982.
Decided Dec. 8, 1982.

Carlos V. Garcia Gutierrez, with whom Harry Anduze Montano, Santurce, P.R., was on petition for writ of mandamus, for petitioners Colegio De Abogados De Puerto Rico and Fundacion Colegio De Abogados.

Jay A. Garcia Gregory, and Miriam Naveira De Rodon, with whom Salvador Antonetti, and Jose Julian Alvarez Gonzalez, San Juan, P.R., were on petition for writ of mandamus, for petitioners the Justices of the Supreme Court of Puerto Rico.

Robert E. Schneider, Jr., Santurce, P.R., and Hector L. Marquez, San Juan, P.R., for Robert E. Schneider, Jr., et al.

Before COFFIN, Chief Judge, BOWNES and BREYER, Circuit Judges.

BREYER, Circuit Judge.

The petitioners in these cases, the Puerto Rico Bar Association (the "Colegio"), the Bar Association Foundation (the "Fundacion"), and the Justices of the Supreme Court of Puerto Rico, seek writs of mandamus to compel the federal district court to dismiss suits that five local attorneys have brought against them. The suits, which are brought against other Commonwealth defendants as well, are part of an ongoing course of litigation attacking the constitutionality of statutes that require members of the Puerto Rico bar to support the Colegio. While the petitions were pending here, the district court dismissed some, but not all, of the claims at issue below. Given the present procedural posture of this case, we find that the Justices are entitled to a writ providing them with a portion of the relief that they seek. We find no basis, however, for issuing the writ sought by the Colegio and the Fundacion.

## I

The litigation underlying this proceeding concerns the constitutionality of statutes that require members of the Puerto Rico bar to belong to and support the Colegio. Puerto Rico has an "integrated bar," meaning that an attorney who wishes to practice in the Commonwealth must belong to the Colegio. 4 L.P.R.A. § 774. As a condition of membership in the Colegio, members must pay annual dues. If a member does not pay, he is suspended from the Colegio, and an attorney who is suspended from the Colegio loses the right to practice in Puerto Rico. *Id.* §§ 774, 781–82. Commonwealth attorneys are also required to support the Colegio and the Fundacion by purchasing forensic stamps and, in their capacities as notaries, notarial stamps. *Id.* §§ 783, 1006. The proceeds from the sale of the stamps are given to the Colegio. *Id.* § 785.

The attack on the constitutionality of these statutes evidently began on November 21, 1977, when the Colegio filed disciplinary complaints in the Commonwealth Supreme Court accusing a large number of attorneys, including three of the five plaintiffs in these cases, of nonpayment of dues. Two of the present plaintiffs, Robert Schneider and Hector Ramos Diaz, responded by attacking the mandatory membership and dues provisions as unconstitutional under both the Commonwealth and the federal constitutions. They had no occasion at the time to challenge the stamp provisions, and they subsequently withdrew their federal (but not Commonwealth) constitutional challenges to the membership and dues provisions. The Commonwealth Supreme Court, relying heavily on federal precedent, held that the membership and dues provisions were valid under the Commonwealth constitution. *Colegio v. Schneider,* No. 0–77–431 (P.R. Apr. 5, 1982). The court also held, however, that the lawyers were constitutionally entitled to prevent the Colegio from using their dues to support ideological causes with which they disagreed. *See Abood v. Detroit Board of Education,* 431 U.S. 209, 97 S.Ct. 1782, 52 L.Ed.2d 261 (1977). The court ordered Schneider and Ramos to pay their dues to the Colegio,

subject to a then-unsettled "fund segregation" plan. Schneider and Ramos refused to do so, and on June 3, 1982, the Supreme Court suspended them from the practice of law.

Six days later, Schneider and Ramos sued the Colegio, the Fundacion, the Justices, and the Commonwealth Secretaries of Justice and the Treasury in federal court. Asserting federal jurisdiction on the basis of 42 U.S.C. § 1983, they attacked the membership and dues statutes again, this time expressly on federal constitutional grounds. They also attacked the constitutionality of the stamp statutes insofar as the statutes entailed using public funds for what they regarded as private purposes. Finally, they attacked the Commonwealth disciplinary proceedings as having violated their federal constitutional rights. They sought injunctions barring any of the defendants from enforcing the statutes, and damages from the Justices and the Colegio based upon the disciplinary proceedings.

Within two weeks, three more plaintiffs (only one of whom had been involved in the Commonwealth proceedings) filed similar complaints, which closely tracked the claims of Schneider and Ramos but omitted claims based on the disciplinary proceedings. On June 21, the Justices moved to dismiss all claims against them; the Colegio and the Fundacion followed suit with similar motions. The Justices sought an expedited decision on their motion, and when no such decision was forthcoming by early July, they sought mandamus here. Emphasizing that the litigation in general, and the possibility of discovery in particular, threatened their judicial work, they asked that we require the district court either to grant their dismissal motions outright or at least to reach an immediate decision. We stayed proceedings against them, while leaving the district court free to decide their motion for dismissal. The Colegio and Fundacion also petitioned for mandamus, requesting the same relief.

On September 13, two days before the petitions for mandamus were to be heard in

this court, the district court passed on the dismissal motions of the Justices, the Colegio and the Fundacion. In a carefully reasoned opinion, it dismissed all conspiracy claims, all disciplinary and damage claims against the Justices, many of the damage claims against the Colegio and Fundacion, and all claims challenging the outcome of the prior disciplinary proceedings. In essence, it left the Justices subject only to the claims for declaratory and injunctive relief against the enforcement of the membership, dues, and stamp statutes. The Colegio and the Fundacion remained subject to similar claims and certain others. The Justices, the Colegio and the Fundacion continue to seek mandamus in order to have the district court dismiss the remaining claims.

## II

 Neither the Colegio nor the Fundacion is entitled to a writ of mandamus. It is elementary that mandamus requires a showing that interlocutory relief is necessary to prevent irreparable harm. Whether the Colegio and the Fundacion wish this court to invoke its traditional mandamus power over errors of a jurisdictional nature, its "supervisory" mandamus authority, or its "advisory" mandamus powers, they must demonstrate that something about the circumstances here would make an ordinary appeal inadequate to protect their interests. *See Bankers Life & Casualty Co. v. Holland,* 346 U.S. 379, 385, 74 S.Ct. 145, 149, 98 L.Ed. 106 (1953); *United States v. Kane,* 646 F.2d 4, 9 n. 7 (1st Cir.1981); *United States v. Sorren,* 605 F.2d 1211, 1214–15 (1st Cir.1979); *Grinnell Corp. v. Hackett,* 519 F.2d 595, 599 (1st Cir.), *cert. denied sub nom. Chamber of Commerce of the United States v. United Steelworkers of America,* 423 U.S. 1033, 96 S.Ct. 566, 46 L.Ed.2d 407 (1975). No such showing has been made. The only plausible injury that a denial of mandamus might inflict on these petitioners is the time and expense of taking part in the litigation below as it pursues its ordinary course. The Supreme Court has made clear in another context that the expense of litigation ordinarily does not constitute irreparable injury, and this court has specifically rejected the general burdensomeness of litigation as a basis for assuming mandamus jurisdiction. *See Renegotiation Board v. Bannercraft Co.,* 415 U.S. 1, 24, 94 S.Ct. 1028, 1040, 39 L.Ed.2d 123 (1974) ("Mere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury."); *In re Sylvania Electric Products, Inc.,* 220 F.2d 423, 425 (1st Cir.1955); *cf. In re Continental Investment Corp.,* 637 F.2d 1, 5–6 (1st Cir. 1980) (collateral-order doctrine). Because they have failed to show how or why they cannot obtain full relief from any of the district court's alleged errors by appealing a final judgment, the Colegio and the Fundacion have failed to establish their right to mandamus.

## III

The issues that the Justices raise are more difficult. As will be discussed below, they arguably suffer a special institutional harm by being forced to remain parties in this suit against their will. Moreover, at least one of their arguments is "jurisdictional" in nature—a traditional predicate for the issuance of a writ of mandamus. *United States v. Sorren, supra.* We therefore describe their status in the suit and their jurisdictional argument in detail.

The Justices are now essentially nominal parties in the suits against them. The district court has addressed their dismissal motion, mooting their alternative prayer that we order the district court to make a decision. Moreover, the court has decided, by and large, in their favor. All damage claims, all conspiracy claims, and (in the district court's words) all claims "seeking in any way to modify, alter, challenge or otherwise affect the outcome" of the prior disciplinary proceedings, have been dismissed. The suits against the Justices have been reduced to conventional prospective attacks on the constitutionality of Commonwealth statutes, seeking traditional injunctive and declaratory relief. The plaintiffs stated to us at oral argument that they would not conduct discovery against the Justices in light of the district court's dispo-

sition of the Justices' motion, which relieves the most immediate practical burden of the litigation. In addition, since the other defendants have adequate incentive and resources to defend the statutes, it is difficult to see that the Justices, as a practical matter, need participate further in the suits. It is certainly true that they need not bear the burden of full litigation.

Judges who occupy this kind of nominal-party position rarely object to their inclusion in suits on that ground. *See, e.g., Fernandez v. Trias Monge,* 586 F.2d 848 (1st Cir.1978). On the rare occasions when they have so objected, however, courts have carefully considered their claims and, in several instances, have ordered their dismissal from the suit. *See Mendez v. Heller,* 530 F.2d 457 (2d Cir.1976); *Gras v. Stevens,* 415 F.Supp. 1148 (S.D.N.Y.1976) (three-judge court). We therefore review the Justices' arguments with similar attention.

### A. *Membership and Dues Claims*

Mandamus traditionally has issued to correct essentially "jurisdictional" errors; the conventional office of the writ is to restrain lower courts from acting in clear excess of their jurisdiction. *See United States v. Sorren,* 605 F.2d at 1215. The Justices make one strong jurisdictional argument before us. That argument, which rests on Article III of the Constitution, is that there is no "case or controversy" between the Justices and the plaintiff with respect to the membership and dues claims. It is fundamental that to be heard in a federal court, a "controversy" between litigants must be "definite and concrete, touching the legal relationships of the parties having adverse legal interests." *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 240–41, 57 S.Ct. 461, 463–464, 81 L.Ed. 617 (1937); *see also United States Parole Commission v. Geraghty,* 445 U.S. 388, 403, 100 S.Ct. 1202, 1212, 63 L.Ed.2d 479 (1980), and *United States v. Johnson,* 319 U.S. 302, 305, 63 S.Ct. 1075, 1076, 87 L.Ed. 1413 (1943). Here, the Justices argue, they and the plaintiffs possess no such "adverse legal interests," for the Justices' only function

concerning the statutes being challenged is to act as neutral adjudicators rather than as administrators, enforcers, or advocates.

We agree, with one qualification to be mentioned later, *see* pp. 23–24 *infra,* that the role of the Justices with respect to these statutes is adjudicative. The Commonwealth's statutes require that an attorney who wishes to practice law in Puerto Rico obtain admission to the Commonwealth bar and become a member of the Colegio. They also provide that nonpayment of dues warrants suspension from the Colegio, and that an attorney who has been suspended from the Colegio loses the right to practice. 4 L.P.R.A. §§ 774, 781. Under the statutory scheme, both the Colegio and the Secretary of Justice can bring a complaint based on nonpayment of dues before the Puerto Rico Supreme Court. 4 L.P.R.A. §§ 738, 773(g). In deciding cases based on such complaints, the Justices act as they would in any other case based upon a Commonwealth statute: they sit as adjudicators, finding facts and determining law in a neutral and impartial judicial fashion.

We also agree that, at least ordinarily, no "case or controversy" exists between a judge who adjudicates claims under a statute and a litigant who attacks the constitutionality of the statute. Judges sit as arbiters without a personal or institutional stake on either side of the constitutional controversy. They are sworn to uphold the Constitution of the United States. They will consider and decide a claim that a state or Commonwealth statute violates the federal Constitution without any interest beyond the merits of the case. Almost invariably, they have played no role in the statute's enactment, they have not initiated its enforcement, and they do not even have an institutional interest in following their prior decisions (if any) concerning its constitutionality if an authoritative contrary legal determination has subsequently been made (for example, by the United States Supreme Court). In part for these reasons, one seeking to enjoin the enforcement of a statute on constitutional grounds ordinarily sues the enforcement official authorized to bring suit under the statute; that individual's

institutional obligations require him to defend the statute. One typically does not sue the court or judges who are supposed to adjudicate the merits of the suit that the enforcement official may bring. That is presumably why the plaintiffs in this case have sued the Colegio and the Secretary of Justice, the parties in whose hands the enforcement of the challenged statutes is vested.

What authority there is on the subject is consistent with these views. In *Mendez v. Heller,* 380 F.Supp. 985 (E.D.N.Y.1974) (three-judge court) (*per curiam*), aff'd, 530 F.2d 437 (2d Cir.1976), a plaintiff challenged the residency requirements of New York's divorce statute and sought, *inter alia,* to enjoin several state judges from enforcing the requirement in any divorce proceeding she might bring in the future. The three-judge court held that no justiciable controversy existed between the plaintiff and the judges, and the Second Circuit affirmed on that ground. The logic of the opinion is clear:

> Normally issues, and particularly issues of constitutional dimensions, are not determined except where they are necessarily drawn in question by litigation over real and present disputes in which the interest of each party requires that it seek a determination of the issue in an opposite sense of that sought by the other party. Hence, entertainment of plaintiff's suit here requires the conclusion that there is a genuine controversy between the plaintiff and one or more of the defendants in which they have an adverse interest to hers in the determination. But [the state judge] has no such interest: if, as plaintiff contends, the statute is unconstitutional, then [the judge's] sole interest is in so determining, and in denying effect of the statute. He is not an adversary of the plaintiff, but a judicial officer bound to decide the issue according to the law as he finds it.... [H]is posture would be that of an entirely disinterested judicial officer and not in any sense the posture of an adversary to the contentions made on either side of the case.

380 F.Supp. at 990. In *Gras v. Stevens, supra,* Judge Friendly reached an identical conclusion in a suit challenging the constitutionality of a New York law requiring husbands but not wives to bear part of the cost of their spouses' legal representation in divorce proceedings. He concluded that state judges were not proper party defendants under § 1983 because they had no stake in upholding the statute against constitutional challenge: "If [the plaintiff] is right in thinking that § 237(a) of the Domestic Relations Law offends the equal protection clause of the Fourteenth Amendment, they are as bound to strike it down as we are." 415 F.Supp. at 1151 (footnote omitted). Although no other courts appear to have had occasion to consider the issue directly, several have alluded to it in terms comparable to those in *Mendez* and *Gras. See Cavett v. Ellis,* 578 F.2d 567, 570 n. 6 (5th Cir.1978); *Rhodes v. Laurino,* 444 F.Supp. 170, 172 n. 3 (E.D.N.Y.1978), aff'd per curiam, 601 F.2d 1239 (2d Cir.1979).

■ We find the reasoning in *Mendez* and *Gras* persuasive. However, like the Second Circuit and Judge Friendly, we are reluctant to rest our decision directly on Article III when the case can be resolved on a nonconstitutional basis. *See Hagans v. Lavine,* 415 U.S. 528, 547, 94 S.Ct. 1372, 1384, 39 L.Ed.2d 577 (1974); *Ashwander v. TVA,* 297 U.S. 288, 346–47, 56 S.Ct. 466, 482–483, 80 L.Ed. 688 (1936) (Brandeis, J., concurring). We interpret *Mendez* and *Gras* as holding that under the circumstances present in those cases, judges were not proper party defendants in § 1983 actions challenging the constitutionality of state statutes. In short, § 1983 does not provide relief against judges acting purely in their adjudicative capacity, any more than, say, a typical state's libel law imposes liability on a postal carrier or telephone company for simply conveying a libelous message. *See, e.g., Mason v. Western Union Tel. Co.,* 52 Cal.App.3d 429, 125 Cal.Rptr. 53 (1975) (telegraph company); *Anderson v. New York Tel. Co.,* 42 A.D.2d 151, 345 N.Y.S.2d 740 (1973) (telephone company). Just as a dismissal for failure to state a claim would be

proper in the latter case, so is it in the former. *See* Fed.R.Civ.P. 12(b)(6). By joining in this interpretation of § 1983, we avoid the constitutional problems that might be raised by a more expansive application of the statute. *See Crowell v. Benson,* 285 U.S. 22, 62, 52 S.Ct. 285, 296, 76 L.Ed. 598 (1932). We avoid explicitly finding that Congress could not make judges proper parties in cases such as this one should it choose to do so, and we avoid the constitutional snares that might otherwise be posed by similar, but distinguishable, cases.

Among those similar but distinguishable cases is *Supreme Court of Virginia v. Consumers Union of America, Inc.,* 446 U.S. 719, 100 S.Ct. 1967, 64 L.Ed.2d 641 (1980), in which the Supreme Court held that the litigants before it could sue judges to enjoin them from enforcing bar membership requirements. *See also Mandel v. Erickstad,* 648 F.2d 1175 (8th Cir.1981); *Person v. Association of the Bar of New York,* 554 F.2d 534 (2d Cir.), *cert. denied,* 434 U.S. 924, 98 S.Ct. 403, 54 L.Ed.2d 282 (1977); *Austin v. Municipal Court,* 235 F.2d 836 (D.C.Cir. 1956), *cert. denied,* 353 U.S. 923, 77 S.Ct. 682, 1 L.Ed.2d 720 (1957). In *Consumers Union,* unlike the case before us, the requirements under attack were promulgated by the judges themselves in the form of court rules; the judges had acted in a legislative capacity, which made their involvement in the litigation more direct and which gave them an institutional stake in the litigation's outcome. It is therefore not surprising that the Supreme Court in *Consumers Union,* as well as the courts of appeals in *Mandel, Person,* and *Austin,* have treated the judicial defendants as having acted in a nonadjudicatory (enforcement) capacity. There is no reason to read into these cases any further conclusion that plaintiffs can appropriately sue judges whenever they attack a statute as unconstitutional, nor is there any reason for us to question these cases in arriving at the result we reach here.

Other categories of suits are equally distinguishable. For example, judges are frequently named as defendants when litigants seek writs of mandamus, prohibition, and the like. In such instances, unlike this case, the judge is named as a party as a matter of proper form; the writ is a traditional and well-accepted procedural device for transmitting instructions from one court to another, and there are sound procedural reasons for making the judge a formal participant in an ongoing controversy over his disposition of an existing suit.

In still other suits, it is arguably necessary to enjoin a judge to ensure full relief to the parties. *Cf. WXYZ, Inc. v. Hand,* 658 F.2d 420 (6th Cir.1981) (plaintiff obtains injunction against state court enforcement of prior court suppression order). Such cases are unusual, for a court should not enjoin judges from applying statutes when complete relief can be afforded by enjoining all other parties with the authority to seek relief under the statute. *See General Motors Corp. v. Buha,* 623 F.2d 455, 463 (6th Cir.1980); *United Steelworkers of America v. Bishop,* 598 F.2d 408, 413 (9th Cir.1979); *Lamb Enterprises, Inc. v. Kiroff,* 549 F.2d 1052, 1060 (6th Cir.), *cert. denied,* 431 U.S. 968, 97 S.Ct. 2926, 53 L.Ed.2d 1064 (1977). Indeed, it is ordinarily presumed that judges will comply with a declaration of a statute's unconstitutionality without further compulsion. *See Davis v. Page,* 640 F.2d 599, 605 (5th Cir.1981) (*en banc*), *vacated on other grounds sub nom. Chastain v. Page,* —— U.S. ——, 102 S.Ct. 3504, 73 L.Ed.2d 1380 (1982); *cf. Law Students Civil Rights Research Council, Inc. v. Wadmond,* 299 F.Supp. 117, 133 (S.D.N.Y.1969) (three-judge court) (Friendly, J.), *aff'd,* 401 U.S. 154, 91 S.Ct. 720, 27 L.Ed.2d 749 (1971). In any event, there is no relief-related basis for including the judges in this law suit.

We recognize the existence of cases similar to this one, other than *Mendez* and *Gras,* in which courts have entertained suits against judges that attack statutes related to the judicial process or statutes previously enforced by the particular judge against the plaintiff. *See, e.g., Fernandez v. Trias Monge, supra; Stivers v. Minnesota,* 575 F.2d 200 (8th Cir.1978), *cert. denied,* 439

U.S. 1127, 99 S.Ct. 1043, 59 L.Ed.2d 88 (1979); *Fowler v. Alexander,* 478 F.2d 694 (4th Cir.1973). In such cases, however, plaintiffs typically have been denied relief—although on grounds other than justiciability. Where plaintiffs have obtained relief, the justiciability issue has not been raised. We have found only one case in which a federal court enjoined state judges from enforcing a state statute; and no party in that case appears to have presented the "case or controversy" question. *Kendall v. True,* 391 F.Supp. 413 (W.D.Ky.1975).

Before concluding that the Justices are correct, however, we must turn to the qualification mentioned earlier, *see* p. 21 *supra*—a qualification as to our statement that the Justices' role is adjudicatory. The Commonwealth Supreme Court has long claimed an *inherent* disciplinary power over members of the bar, including the power to discipline attorneys for causes other than those enumerated by statute. *See Colegio v. Barney,* No. 0–80–199 (P.R. June 17, 1980), slip op. at 3; *In re Liceaga,* 82 P.R.R. 245, 248–49 (1961); *In re Abella,* 67 P.R.R. 211, 219 (1947); *In re Gonzalez,* 65 P.R.R. 357, 367 (1945); *In re Bosch,* 65 P.R.R. 232, 234 (1945); *In re Tormes,* 30 P.R.R. 248, 249–50 (1922). Moreover, the Supreme Court has asserted the general power to initiate a disciplinary proceeding itself, regardless of the involvement of the Colegio or the Secretary of Justice. *See, e.g., In re Gonzalez,* 65 P.R.R. at 367–68. Insofar as the plaintiffs direct their claims against the exercise of this disciplinary power, they are suing the Justices as "enforcers" rather than as "adjudicators." *See Supreme Court of Virginia v. Consumers Union,* 446 U.S. at 736 & n. 15, 100 S.Ct. at 1977 & n. 15.

▪ ■ A review of the way in which the judges have exercised their enforcement power, however, makes clear that there is virtually no likelihood that this nonstatutory power could, or would, ever be exercised to enforce the membership and dues requirements at issue here. The Justices' attorneys have assured us that this power is exercised only with respect to attorney misconduct that occurs in proceedings before the Supreme Court itself. Even if that assurance is overstated, the court's exercise of its power has been limited to instances of actual misconduct, whether the misconduct has taken place in front of the Supreme Court or in a court below. *See, e.g., In re Gonzalez, supra* (Supreme Court initiates proceedings against attorney who filed defamatory pleadings in lower court). We can find no cases to the contrary. As long as the statutes exist, the Court will proceed to adjudicate under the statutes. Should the plaintiffs succeed in setting aside the statutes, nonpayment of dues or refusal to join the Colegio would not constitute misconduct. There is thus no reason to believe that the Justices would penalize any such activity.

The Supreme Court has recognized that the mere existence of enforcement power does not create a justiciable controversy under Article III with enforcement officials. *See Supreme Court of Virginia v. Consumers Union,* 446 U.S. at 736 n. 15, 100 S.Ct. at 1977 n. 15. Indeed, as applied to challenges to regulatory and criminal statutes, federal courts have taken Article III to require a showing not only that the plaintiff is reasonably likely to engage in proscribed (but allegedly constitutionally protected) conduct, but also that the officials responsible for enforcing the challenged statute are reasonably likely to prosecute the plaintiff when he does so. *See Babbitt v. United Farm Workers National Union,* 442 U.S. 289, 298, 99 S.Ct. 2301, 2308, 60 L.Ed.2d 895 (1979); *O'Shea v. Littleton,* 414 U.S. 488, 493–98, 94 S.Ct. 669, 674–677, 38 L.Ed.2d 674 (1974); *Poe v. Ullman,* 367 U.S. 497, 507, 81 S.Ct. 1752, 1758, 6 L.Ed.2d 989 (1961) (plurality opinion); *McCollester v. City of Keene,* 668 F.2d 617, 618–21 (1st Cir.1982); *International Society for Krishna Consciousness v. Eaves,* 601 F.2d 809, 818 (5th Cir.1979). *But cf. Epperson v. Arkansas,* 393 U.S. 97, 101–02, 89 S.Ct. 266, 268–269, 21 L.Ed.2d 228 (1968) (Supreme Court reaches merits of attack on Arkansas statute despite the fact that "[t]here is no record of any prosecutions in Arkansas under its statute.").

Again, we need not reach the Article III question directly here, for in light of these cases, and in light of the fact that the plaintiffs have made no representations in their complaint or in argument before us concerning a genuine risk of enforcement by the Justices, *cf. Dewey v. University of New Hampshire,* 694 F.2d 1 (1st Cir.1982), the plaintiffs' complaint does not state a claim against the Justices in their enforcement capacity.

▅▅▅ We conclude that the plaintiffs have failed to state any claim against the Justices concerning the membership and dues statutes. We also believe that mandamus is an appropriate remedy to bring about the dismissal of those claims. Mandamus traditionally requires a showing of "jurisdictional" error, but courts look to the practical nature of the claim of error rather than to its formal label. *See United States v. Lasker,* 481 F.2d 229, 235 (2d Cir.1973), *cert. denied,* 415 U.S. 975, 94 S.Ct. 1560, 39 L.Ed.2d 871 (1974); *see also In re United States,* 565 F.2d 173 (1st Cir.1977); *In re La Providencia Development Corp.,* 406 F.2d 251 (1st Cir.1969). Our decision here, while formally resting on the plaintiffs' failure to state a claim, is so influenced by Article III-type jurisdictional considerations that it falls within the scope of our traditional mandamus authority. Arguably, this case falls within the terms of our "advisory" mandamus power as well. The issue presented is novel in this circuit, it is important, and given the number of new plaintiffs who have joined these proceedings and the possibility of parallel proceedings, it may well recur before further appellate review is possible. *See Grinnell Corp. v. Hackett,* 519 F.2d at 599.

More importantly, the type of harm that would be caused by remitting the Justices to the ordinary appellate process here is not that suffered by an ordinary litigant who is forced to wait until the conclusion of a lawsuit to cure legal errors on appeal. To require the Justices unnecessarily to assume the role of advocates or partisans on these issues would tend to undermine their role as judges. To encourage or even force them

to participate as defendants in a federal suit attacking Commonwealth laws would be to require them to abandon their neutrality and defend as constitutional the very laws that the plaintiffs insist are unconstitutional—laws as to which their judicial responsibilities place them in a neutral posture. Indeed, a public perception of partiality might well remain even were the Justices to take no active part in the litigation. The result risks harm to the court's stance of institutional neutrality—a harm that appeal would come too late to repair. While at times such harms may have to be tolerated in order to afford proper relief to a party, we believe that they warrant the exercise of our mandamus power here, when no relief question is at issue and when the plaintiffs, for reasons of a jurisdictional sort, have failed to make out a case against the Justices.

B. *The Forensic and Notarial Stamp Claims*

The Justices did not make a similar Article III-type jurisdictional argument concerning the stamp claims in the court below. The plaintiffs' stamp claims, like their other claims, contest the constitutionality of Commonwealth statutes, in this instance those requiring forensic and notarial stamp purchases whose proceeds go to the Colegio. The Justices' Article III position with respect to these claims, however, may be different, for here the Justices, and particularly the Chief Justice, may occupy a special administrative position. *See* 4 L.P.R.A. § 1038. The plaintiffs have a plausible argument that they are suing the Justices in their "administrative" rather than their "adjudicative" capacity. If the Justices believe the contrary, they must make their argument first in the district court.

▅▅▅ None of the Justices' objections to the plaintiffs' claims warrants issuance of a writ of mandamus, for each objection is either incorrect or nonjurisdictional, or both. The Justices' argument that they are simply immune from suit for injunctive or declaratory relief is wrong; the district court correctly held that there is no such

absolute immunity and that injunctions can be issued against judges in an appropriate case. *See Harris v. Harvey,* 605 F.2d 330 (7th Cir.1979) (dictum), *cert. denied,* 445 U.S. 938, 100 S.Ct. 1331, 63 L.Ed.2d 772 (1980); *Heimbach v. Village of Lyons,* 597 F.2d 344 (2d Cir.1979) (*per curiam* ); *Rud v. Dahl,* 578 F.2d 674 (7th Cir.1978) (*per curiam* ); *Kelsey v. Fitzgerald,* 574 F.2d 443 (8th Cir.1978) (*per curiam* ); *Briggs v. Goodwin,* 569 F.2d 10 (D.C.Cir.1977) (dictum), *cert. denied,* 437 U.S. 904, 98 S.Ct. 3089, 57 L.Ed.2d 1133 (1978); *Shipp v. Todd,* 568 F.2d 133 (9th Cir.1978) (*per curiam* ); *Person v. Association of the Bar of New York, supra; Timmerman v. Brown,* 528 F.2d 811 (4th Cir.1975); *Hansen v. Ahlgrimm,* 520 F.2d 768 (7th Cir.1975); *Fowler v. Alexander,* 478 F.2d 694 (4th Cir.1973); *Littleton v. Berbling,* 468 F.2d 389 (7th Cir. 1972), *rev'd on other grounds sub nom. O'Shea v. Littleton,* 414 U.S. 488, 498, 94 S.Ct. 669, 677, 38 L.Ed.2d 674 (1974); *Jacobson v. Schaefer,* 441 F.2d 127 (7th Cir.1971); *Law Students Civil Rights Research Council, Inc. v. Wadmond, supra.* The Justices' argument that the plaintiffs' claims are barred by res judicata and collateral estoppel is not jurisdictional, and we do not see in any event how it applies to stamp claims whose merits have not previously been decided.

■ The facts that the stamp claims were only mentioned in dicta in the previous disciplinary suits before the Commonwealth Supreme Court, and that some of the plaintiffs here did not participate in those suits, disposes of the Justices' claims based on *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923) (forbidding federal district courts from asserting appellate jurisdiction over state court judgments). The Justices also argue that abstention is proper under *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), but there is no current Commonwealth proceeding involving the stamp statutes to which the district court can defer. Finally, the Justices argued at length that the membership and dues claims were outside the subject matter jurisdiction of the district court because they did not present

substantial federal questions, *see, e.g., Hagans v. Lavine,* 415 U.S. at 536–38, 94 S.Ct. at 1378–1379; *Bell v. Hood,* 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946), but they have raised no similar argument about the stamp claims, perhaps wisely.

The Justices do argue that the district court is barred from hearing the stamp claims by the Butler Act, 48 U.S.C. § 872, which provides in relevant part that "[n]o suit for the purpose of restraining the assessment or collection of any tax imposed by the laws of Puerto Rico shall be maintained in the District Court of the United States for Puerto Rico." The Justices argue that the stamp fees at issue are "taxes" within the meaning of the Butler Act. The district court rejected this argument, noting that whether or not the stamp fees constitute a "tax" for purposes of the Act presents a question of federal law rather than one of Commonwealth law, as the Justices' brief suggests. *See Robinson Protective Alarm Co. v. City of Philadelphia,* 581 F.2d 371 (3d Cir.1978) (construing meaning of "tax" in Tax Injunction Act of 1937).

■ This court has construed the Butler Act *in pari materia* with the Tax Injunction Act of 1937. *Carrier Corp. v. Perez,* 677 F.2d 162, 164 (1st Cir.1982). The Tax Injunction Act was enacted because otherwise,

> "state tax administration might be thrown into disarray, and taxpayers might escape the ordinary procedural requirements imposed by state law. During the pendency of the federal suit the collection of revenue under the challenged law might be obstructed, with consequent damage to the State's budget, and perhaps a shift to the State of the risk of taxpayer insolvency. Moreover, federal constitutional issues are likely to turn on questions of state law, which . . . are more properly heard in the state courts."

*Rosewell v. LaSalle National Bank,* 450 U.S. 503, 527, 101 S.Ct. 1221, 1236, 67 L.Ed.2d 464 (1981) (quoting *Perez v. Ledesma,* 401

U.S. 82, 128 n. 17, 91 S.Ct. 674, 699 n. 17, 27 L.Ed.2d 701 (1971) (Brennan, J., concurring in part and dissenting in part)). Since these concerns are not significantly implicated when the revenue scheme under attack devotes all of the funds that it generates to a bar association rather than to the treasury, 4 L.P.R.A. §§ 785(b), 1006, we find no clear error in the district court's finding that the Butler Act does not apply.

 To repeat, the Justices' position in the stamp litigation is that of a nominal party. They will not suffer discovery; they need not appear; and since other parties (including the Commonwealth Secretary of Justice) are prepared to defend the statutes on their merits, they need not take a position or even file a brief. Their arguments are insufficient to show any clear jurisdictional error in the district court's failure to dismiss them at this stage of the proceedings, at least since they may possess administrative responsibilities in respect to the stamp statutes that would make them a proper party for purposes of "case or controversy." *Cf. Supreme Court of Virginia v. Consumers Union, supra.* We do not see how the maintenance of the stamp suits against them as purely nominal parties could affect the functioning of, or any judgment of, their court or any other Commonwealth court so as to warrant the exercise of any "supervisory" or "advisory" power of mandamus that we might have. The petition in respect to the stamp claims is therefore denied.

### IV

The petition of the Colegio and the Fundacion for a writ of mandamus is denied. The petition of the Justices for a writ of mandamus is granted in part and denied in part. A writ shall issue in accordance with this opinion, requiring the district court to dismiss the claims against the Justices insofar as they involve Puerto Rico's system of compulsory bar membership and compulsory payment of bar dues.

*So ordered.*