**Carlos A. ROMERO, Plaintiff,**

v.

**COLEGIO DE ABOGADOS DE PUERTO RICO, and Harry Anduze, Defendants.**

**No. Civ. 94–2503CCC.**

United States District Court, D. Puerto Rico.

Feb. 25, 1999.

Jorge Pizarro, and Robert G. Post, Hato Rey, PR, for plaintiff.

Carlos A. Rodriguez–Vidal, Ricardo Ortiz–Colon, Hato Rey, PR, for defendant.

## OPINION AND ORDER

CEREZO, Chief Judge.

This is an action under 42 U.S.C. § 1983 based on allegations of violations of constitutional rights protected by the United States Constitution. Plaintiff, Carlos A. Romero, Jr., is an attorney admitted to practice in the Commonwealth of Puerto Rico. He is a member of the Colegio de Abogados de Puerto Rico ("the Colegio"), as the Puerto Rico Bar Association is known in Spanish, since compelled membership in the Colegio is a condition to practice law in Puerto Rico under Act No. 43 of May 14, 1932, 4 L.P.R.A. § 774. The Colegio purchases group life insurance for all of its members. Plaintiff objects to the use of a portion of his dues for the obtention of group life insurance through the Colegio, and seeks injunctive relief in a verified complaint filed against the Colegio and Mr. Harry Anduze (Anduze), a former president of that institution.

After the pretrial conference, the parties filed simultaneous dispositive motions (**docket entries 53 & 54**). Having considered the parties' submissions (*see also* docket entries 55, 56, 57 & 58), the Court GRANTS summary judgment in favor of the defendants on the ground that plaintiff's challenge to the purchase by the Colegio of group life insurance for all of its members does not constitute a colorable claim of a deprivation of any right of constitutional dimension.

The relevant facts are as follows. On November 15, 1993, before this litigation began, plaintiff filed a "Motion Requesting Return of Annual Dues Withheld Since 1985", and a "Motion Requesting Reclassification of Portion of Annual Dues Destined for Purchase of Group Life Insurance and to be Allowed to Opt Out of Coverage" (Exh. P of Plaintiff's Motion for Partial Summary Judgment, docket entry 53) before the Colegio de Abogados Activities' Review Board, a board created by regulation of the Supreme Court of Puerto Rico to adjudicate disputes over the use of funds derived from the Colegio's member dues. Plaintiff requested from the Review Board a "determination ... as to the appropriate amount to be refunded for each of the years in question," and that the "appropriate amount to be refunded should be determined in accordance with the regulations in effect for each of the years in question." Exh. P, at p. 3. He further requested that the Review Board allow him to opt out of life insurance coverage to "have his annual due reduced by $74." Exh. P, at p. 8. The Colegio opposed both motions. The Review Board held a hearing on April 29, 1994.

While that petition was pending, plaintiff filed this lawsuit, raising almost the identical issues presented before the Review Board. In addition, plaintiff claims that his rights under the First Amendment of the U.S. Constitution are being violated because 1) by his calculations, the Colegio devotes more than 80% of its revenues from dues to nongermane purposes, 2) the Colegio has failed to use the least restrictive means of achieving its interests, and 3) the Colegio has failed to adopt and implement constitutionally protected safeguards. In addition, plaintiff claims that the group life insurance program that the Colegio provides to its members is objectionable on "ideological" grounds, that is, his opposition to "state mandated commercial relationships". *See* Verified Complaint, docket entry 1.

The Colegio was founded on June 27, 1840, while Puerto Rico was under Spanish rule, through a Royal Decree of May 5, 1838 and the Royal Order of December 31, 1839. The Royal Decree of May 5, 1838

required that any person interested in the practice of law in the region had to become a member of the Bar. This type of compulsory membership in the Colegio existed in Puerto Rico until it was suppressed after the Spanish–American War by General John R. Brooke, during the United States military government in Puerto Rico. A voluntary entity was established. It led a precarious life until 1932. *Colegio De Abogados v. Schneider,* 112 D.P.R. 540, 544–45, 1982 WL 210631 (1982). The current Colegio was declared the successor of the two previous legal entities by Puerto Rico's Act No. 43 of May 14, 1932, 4 L.P.R.A. §§ 771–785. Compelled membership in the Colegio as a condition to practice law in Puerto Rico was restored. 4 L.P.R.A. § 774.

The constitutionality of the Integrated bar system in Puerto Rico has been previously challenged. However, as in other jurisdictions in the United States, compelled membership in the Colegio has been upheld on appeal under certain conditions. *See, Schneider v. Colegio de Abogados de Puerto Rico,* 546 F.Supp. 1251 (D.P.R. 1982) (*"Schneider I"*), *modified sub nom In re Justices of Supreme Court of Puerto Rico,* 695 F.2d 17 (1st Cir.1982); *Schneider v. Colegio de Abogados de Puerto Rico,* 565 F.Supp. 963 (D.P.R.1983) (*"Schneider II"*), *vacated sub nom Romany v. Colegio de Abogados de P.R.,* 742 F.2d 32 (1st Cir.1984); and *Schneider v. Colegio de Abogados de Puerto Rico,* 682 F.Supp. 674 (D.P.R.1988) (*"Schneider III"*), *aff'd in part, rev'd in part, modified and remanded, Schneider v. Colegio de Abogados de Puerto Rico,* 917 F.2d 620 (1st Cir.1990) (*"Schneider IV"*).

In *Keller v. State Bar of California,* 496 U.S. 1, 110 S.Ct. 2228, 110 L.Ed.2d 1 (1990), the Supreme Court reaffirmed its earlier decision in *Lathrop v. Donohue,* 367 U.S. 820, 81 S.Ct. 1826, 6 L.Ed.2d 1191 (1961), holding that compelled membership in an integrated state bar and the payment of compulsory dues as a member of such bar does not *per se* violate an individual

attorney's First Amendment rights. The Court in *Lathrop,* relying on *Railway Employes' Dept. v. Hanson,* 351 U.S. 225, 76 S.Ct. 714, 100 L.Ed. 1112 (1956), rejected a Wisconsin lawyer's claim that he could not constitutionally be compelled to join ·and financially support a state bar association that expressed opinions on, and attempted to influence, legislation.

The First Circuit held up its opinion in *Schneider IV,* awaiting for the decision in *Schneider,* 917 F.2d at 624. In addition to reaffirming compelled membership in the State Bar of California, the Court in *Keller* asserted that a system of mandatory bar membership must include a mechanism for protecting the rights of dissenting members to withhold financial support of activities having political or ideological colorations which are not reasonably related to the advancement of its goals. 496 U.S. at 16, 110 S.Ct. at 2237.

The First Circuit stated as follows when it issued its ruling in *Schneider IV:*

First, as noted above, we think there remains a good possibility that the Colegio can operate constitutionally. The Supreme Court of Puerto Rico has listed a number of useful and important functions performed by the Colegio that are directly linked to the regulation of the legal profession and improving legal services, and it appears that an accounting system now exists for determining the direct and indirect cost of any Colegio activity, *see* 682 F.Supp. at 688 n. 14. Thus, we think it appropriate to act on the assumption, shared by the district court, that the Colegio will be able to modify its rule to comply with *Hudson.* Second, the defendants' interest in maintaining an integrated bar is sufficiently weighty that we should hesitate before halting the system completely. It seems more appropriate to allow the Colegio to continue functioning, at least temporarily, with the compelled dues of members who do not object to its activities. Third, we think that the United States Supreme Court's recent decision on the

integrated bar is likely to spur action that defendants previously may have resisted while pursuing their appeal. Before *Keller*, it had been nearly three decades since the Court addressed the integrated bar, in *Lathrop*, and the commentary since that time has questioned the nature and continuing validity of a mandatory bar. *See*, e.g., "Unified Bar Concept," 1983 Am.B.Found.J., at 67; C. Sorenson, Jr., "The Integrated Bar and the Freedom of Nonassociation—Continuing Siege," 63 Neb.L.Rev. 30, 31 (1983). Now that *Keller* has come down, defendants have an unequivocal need to change their system to ensure its continued operation.

917 F.2d at 636.

On March 25, 1992, the Supreme Court of Puerto Rico created a special commission to draft a regulation relative to the use of funds from dues and stamps collected by the Colegio. This special commission submitted a draft regulation to the Supreme Court. On June 30, 1992, the Supreme Court enacted a Regulation providing for the manner in which the Colegio would make use of the funds it collected through dues and revenues from the sale of internal revenue stamps, and for the resolution of disputes relating to such use.

On February 5, 1993, the Supreme Court amended its Regulation in accordance with suggestions contained in the District Court's order of November 18, 1992 in the *Schneider* litigation. *See In Re: Enmiendas al Reglamento sobre Uso de Fondos del Colegio de Abogados de Puerto Rico Provenientes de Cuotas y Venta de Estampillas*, 93 J.T.S. 19.

Under the Regulation, any member of the Colegio may withhold financial support of activities that fall outside its core purposes by deducting from the payment of annual dues an amount equal to the percentage of dues revenues spent by the Colegio during the previous year on activities classified as non-core activities. This percentage is based on the actual expenditures of the Colegio during the prior year,

and are disclosed to all members before the payment of the annual fees is due, along with the Treasurer's annual report and the proposed budget for the coming year. Rule 4 of the Regulation. For those members who question the disclosures made in the annual reports, or who wish to dissent or object to the classification of a given unbudgeted activity during the course of the year, recourse is available by filing objections before the Colegio de Abogados Activities' Review Board, created by the Supreme Court under its Regulation to receive and adjudicate disputes of this type. *See* Rule 6 of the Regulation.

Plaintiff argues that the life insurance coverage provided by the Colegio to all of its members "has no justifiable bearing on the regulation of the legal profession or the quality of legal services." Plaintiff's Motion for Partial Summary Judgment, docket entry 53, at p. 5. He avers that he is "ideologically opposed to the compulsory insurance program," that he "favors free market forces and freedom of choice" and that he is "adamantly opposed to ... government sponsorship of state mandated commercial relationships." *Id.* As a result, plaintiff argues, the Colegio operates primarily for nongermane purposes unrelated to the constitutionally permissible purposes of a state bar association.

In *Keller*, the Supreme Court summarized its view on the type of challenge allowed to expenditures of mandatory dues by an organization like the Colegio:

> Petitioners here present this very claim for decision, contending that the use of their compulsory dues to finance political and ideological activities of the State Bar with which they disagree violates their rights of free speech guaranteed by the First Amendment.

> In *Abood v. Detroit Board of Education*, 431 U.S. 209, 97 S.Ct. 1782, 52 L.Ed.2d 261 (1977), the Court confronted the issue whether, consistent with the First Amendment, agency-shop dues of nonunion public employees could be used to

support political and Ideological causes of the union which were unrelated to collective-bargaining activities. We held that while the Constitution did not prohibit a union from spending 'funds for the expression of political views ... or toward the advancement of other ideological causes not germane to its duties as collective-bargaining representative,' the Constitution did require that such expenditures be 'financed from charges, dues, or assessments paid by employees who [did] not object to advancing those ideas and who [were] not coerced into doing so against their will by the threat of loss of governmental employment.' ... The Court noted that just as prohibitions on making contributions to organizations for political purposes implicate fundamental First Amendment concerns, ... 'compelled ... contributions for political purposes works no less an infringement of ... constitutional rights.' ... The Court acknowledged Thomas Jefferson's view that 'to compel a man to furnish contributions of money for the propagation of opinions which he disbelieves, is sinful and tyrannical.'

496 U.S. at 9–10, 110 S.Ct. at 2233–34 (citations omitted).

The Court in *Keller* held that the use by the integrated bar of California of mandatory dues to fund **political** and **ideological** activities—where such expenditures were not necessarily or reasonably incurred for the purpose of regulating the legal profession or improving the quality of legal services available to the people of the state— violated the integrated bar members' rights of free speech guaranteed by the First Amendment. The Court based its holding on two grounds: 1) that the integrated bar was analogous to a labor union, which was subject to the First Amendment requirement that spending of funds for the expression of political views or toward the advancement of other ideological causes not germane to a union's duties as a collective bargaining representative be financed from payments by employees who do not

object to advancing those ideas; and 2) that the integrated bar was distinguishable from a typical government agency, which may use revenue for any purpose within the scope of its statutory authority, since the integrated bar was not created to participate in the general government of the state.

In considering whether particular expenditures could be collected from dissenting employees who were under the constraints of compulsory membership in an agency or institution such as a union, the Court has consistently held that the union cannot "collect from dissenting employees any sums for the support of Ideological causes not germane to its duties as collective bargaining agents." *Ellis v. Broth. of Ry., Airline and S.S. Clerks*, 466 U.S. 435, 447, 104 S.Ct. 1883, 1892, 80 L.Ed.2d 428 (1984); *see also Lehnert v. Ferris Faculty Ass'n*, 500 U.S. 507, 520–21, 111 S.Ct. 1950, 1959–60, 114 L.Ed.2d 572 (1991). Conceding such constitutional barrier, however, if the activity or expenditure challenged is without apparent political or ideological colorations and does not implicate First Amendment interests, then the Court has not engaged in the analysis of germaneness to the institution's goals or the lack thereof. This is clearly recognized in *Ellis*, 466 U.S. at 443, 104 S.Ct. at 1892, where the Court, although recognizing the constitutional barrier to financial support of ideological or political activities, nonetheless stated that it had not found it necessary "further to define the line between union expenditures that all employees must help defray and those that are not sufficiently related to collective bargaining to justify their being imposed on dissenters."

In any event, in *Lehnert* the Supreme Court rejected Justice Scalia's "statutory duties" test, stating its disagreement with his view "that any charge that does not relate to an activity expressly authorized by statute is *constitutionally* invalid, irrespective of its impact, or lack thereof, on free expression." 500 U.S. at 526, 111

S.Ct. at 1963. The Court stated: "It seems to us that this proposal bears little relation to the values that the First Amendment was designed to protect." *Id.* Characterizing Justice Scalia's approach as rigid, the Court observed that "[t]he role of an effective representative ... often encompasses responsibilities that extend beyond those specifically delineated in skeletal state labor law statutes," and, specifically referred to the need to "have a certain flexibility in [the] use of compelled funds." 500 U.S. at 526, 111 S.Ct. at 1962–63. In the specific factual context of that case, the Court required that there "be some indication that the payment is for services that may ultimately inure to the benefit of the members of the local union by virtue of their membership in the parent organization." 500 U.S. at 524, 111 S.Ct. at 1961–62. It also recognized that the fact "[t]hat an exclusive bargaining representative has gone beyond the bare requirements of the law in representing its constituents through employee contributions does not automatically mean that the Constitution has been violated...." 500 U.S. at 526, 111 S.Ct. at 1962–63.

Since plaintiff's interpretation of the Colegio's enabling statute recognizes the regulation of the legal profession and the improvement of the quality of legal services as the only responsibilities or statutory duties of the Colegio, there is no room in his view for the Colegio to make any expenditures in other areas, even if no political or ideological cause is advanced. As in *Lehnert*, we find that the expenditure challenged in this case is for a service that ultimately inures to the benefit of the bar members. The Court likewise rejects plaintiff's invitation to follow Justice Scalia's approach in *Lehnert.*

Before the Supreme Court decided *Lehnert*, this Court specifically addressed the issue in *Schneider III*, 682 F.Supp. 674, 685 (D.P.R.1988):

Before the Supreme Court decided *Lehnert*, this Court specifically addressed the issue in *Schneider III*, 682 F.Supp. 674, 685 (D.P.R.1988):

There are some expenditures that are not challenged, and do not seem to present any First Amendment problems.

We note, for example, that the Bar Association provides attorneys with life insurance. A fifth category, therefore, of permissible expenditures, are those with no expressive content, that convey no messages, and benefit all members equally. While not necessarily promoting a great public interest, these items do not act to infringe any real right to freedom of expression, and therefore need not be strictly scrutinized. *See Ellis v. Railway Clerks,* 466 U.S. 435, 456, 104 S.Ct. 1883, 1896, 80 L.Ed.2d 428 (1984).

The Court of Appeals for the First Circuit was of the same view. In *Schneider IV,* the Court stated:

Despite the Supreme Court's reluctance in *Hudson* to confront the 'constitutional nongermaneness question,' we think the quoted discussion from *Ellis* provides the appropriate analysis for resolving the issue. Moreover, not only is the First Amendment *not* a factor, but '[t]he very nature of the free-rider problem and the governmental interest in overcoming it require that the union have a certain flexibility in its use of compelled funds.' *Ellis,* 466 U.S. at 456, 104 S.Ct. at 1896. **We therefore conclude, as did the district court, that activities incidental to the operation of an association—such as social events and the provision of insurance to members—may be financed with mandatory fees.** 917 F.2d at 632 (emphasis ours).

The argument that the Colegio is infringing plaintiff's First Amendment rights to favor "free market forces and freedom of choice" and to oppose "government sponsorship of state mandated commercial relationships or social programs" by providing him with the benefits of group life insurance falls on the same grounds as those raised in *Ellis,* where the Court found that although "[p]etitioners may feel that their money is not being well-spent, ... that does not mean that they have a First Amendment complaint." *Ellis,* 466 U.S. at 456, 104 S.Ct. at 1896.

266

In accordance with these principles, we hold that providing group life insurance for all members of the Colegio is not an expenditure in support of political or ideological causes which implicate the First Amendment. This economic benefit enjoyed by all members of the Colegio is an activity that falls within the flexibility accorded the Colegio in the representation of its members and the protection of their interests. It is not prohibited by any precedent that has passed on the First Amendment implications of compelled membership in a professional organization, whether in the union or bar association context.

As to the issue of the refund requested by plaintiff, the facts on record show that plaintiff became a member of the Colegio in 1979. Exh. A to Plaintiff's Motion for Summary Judgment, docket entry 53. He paid dues in the full amount owed until 1992. Exh. O. For the years 1985, 1987, 1988, 1989, 1990, 1991, and 1992, plaintiff sent a letter stating his objection to all "objectionable activities" of the Colegio. *Id.* When the Regulation went into effect in 1992, plaintiff began paying dues in the discounted amounts, $89.73 for the year 1993 (exh. 22 of plaintiff's verified complaint, docket entry 1)—at a discount of 11.27%—and of $97.09 for the year 1994 (exh. 30 of plaintiff's verified complaint)—at a discount of 2.91%. This option is available to all members who choose to dissent.

Under a plan to issue refunds to all dissenters who asked that a portion of their dues be withheld if they would otherwise were to be used for objectionable activities under the regulation, plaintiff was entitled to a refund. As his petition was pending before the Review Board, on January 26, 1995 the Colegio deposited with the Board that portion of the amount of dues paid by him during all relevant years that corresponded to objectionable activities, with interest, in the event that the Board ruled that he was indeed entitled to receive a refund for said amounts. The Colegio contends now that this Court is not the proper forum in which to litigate

that controversy, and opposes plaintiff's alleged attempt to circumvent the procedures mandated by the Supreme Court of Puerto Rico. The Colegio argues that the refund issue was clearly within the mandate of the Review Board, was under consideration in a proceeding filed by plaintiff himself, and that this Court should defer consideration of that issue. We agree with the Colegio's contention. The refund issue is clearly within the mandate of the Review Board, as a result of the procedures established by the Colegio in conformity with previous Court orders resulting from litigation questioning the constitutionality of the integrated bar, and was under its consideration pursuant to a proceeding filed by plaintiff himself. The Court need not reach the refund issue here.

Accordingly, and for the reasons stated, the motion for summary judgment filed by defendants (**docket entry 54**) is GRANTED, and the motion for summary judgment filed by plaintiff (**docket entry 53**) is DENIED. Judgment will be entered by separate Order dismissing plaintiff's Verified Complaint.

SO ORDERED.