15 F.3d 146
 Virginia Marie GRANT, Plaintiff-Appellee,
v.
Lee JOHNSON, Multnomah County Circuit Court Judge, in his
official capacity, Defendant-Appellant.
Virginia Marie GRANT, Plaintiff-Appellant,
v.
Lee JOHNSON, Multnomah County Circuit Court Judge, in his
official capacity, Defendant-Appellee.
 Nos. 91-35572, 91-35616.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Sept. 1, 1993.
Decided Jan. 28, 1994.
 
 Robert C. Joondeph, Oregon Advocacy Center, Portland, OR, for plaintiff-appellee-appellant Grant.
 Rives Kistler, Asst. Atty. Gen., Salem, OR, for defendant-appellant-appellee Johnson.
 Appeal from the United States District Court for the District of Oregon.
 Before: BROWNING, SCHROEDER, and HALL, Circuit Judges.
 SCHROEDER, Circuit Judge:
 
 
 1
 The appellant, Virginia Marie Grant, successfully sued a state court judge, appellee and cross-appellant Lee Johnson, in federal district court, and obtained declaratory relief under 42 U.S.C. Sec. 1983. The district court declared unconstitutional provisions of Oregon's then existing statutory provisions for the appointment of a temporary guardian for a person deemed to be mentally incompetent. The district court entered the declaration but denied the appellant attorneys' fees. She appealed and the judge cross-appealed. Before the appeal was heard, however, the Oregon legislature amended the statute to cure the deficiencies which had led to the district court's decision, and now both sides agree that the underlying litigation, and hence the cross-appeal, is moot. The appellant's appeal from the denial of fees, however, remains viable. Because we find that the judge was not a proper party defendant in this case, we must affirm the judgment of the district court.
 
 
 2
 At the time this suit was filed, the Oregon statute in question permitted a judge to appoint a temporary guardian without notice or hearing. See ORS 126.133 (1973) (amended 1991). Judge Johnson made such an appointment when appellant's former husband petitioned the court to appoint a guardian for her. Pursuant to the statute, Judge Johnson appointed Grant's mother as temporary guardian, who then placed the appellant in a psychiatric ward where she was involuntarily held for 15 days. During this time she was denied visitation and telephone use, and was held in a locked ward monitored by a video camera. Five days after being hospitalized, Grant was served with a petition for the appointment of a guardian. The petition advised Grant that she could file written objections three weeks later, and that she was also entitled to an attorney and a hearing. Nine days after she had been hospitalized, she was able to contact an attorney, and Judge Johnson eventually granted petitioner's motion to terminate the guardianship.
 
 
 3
 Appellant brought this action against Judge Johnson in district court asking the court to declare the statute in question unconstitutional and to enjoin its future use against her. She alleged that she faced an imminent probability that her mother would use the statute against her to obtain an ex-parte guardianship appointment in the future. The district court granted declaratory relief, and these appeals followed. While the appeals were pending, the Oregon legislature amended the statute, thus mooting Judge Johnson's cross-appeal on the merits. We must, however, still consider the parties' dispute concerning attorney's fees.
 
 
 4
 The district court denied fees on the ground that the judge had acted in good faith in applying the Oregon statute as it was then written. Appellant argues on appeal that good faith alone cannot constitute a "special circumstance" justifying a denial of fees under 42 U.S.C. Sec. 1988. See e.g., Teitelbaum v. Sorenson, 648 F.2d 1248 (9th Cir.1981). Johnson's threshold position is that he is not the proper party for Grant to sue in order to test the constitutionality of a state statute that he merely applied in a neutral fashion. Cf. Pulliam v. Allen, 466 U.S. 522, 527-28, 542, 104 S.Ct. 1970, 1973-74, 1981, 80 L.Ed.2d 565 (1984) (judicial immunity to liability on merits a threshold question to fee recovery under section 1988). He contends that Grant should have sued the person whom she feared would file a petition to create a guardianship under the statute. The law under Sec. 1983 supports his position.
 
 
 5
 Article III prevents federal courts from adjudicating claims when the parties lack the required adverse legal interests. Suits against state judges who are adjudicating cases pursuant to state law raise serious questions about the existence of a justiciable controversy between the parties. The leading authority is In re Justices of Supreme Court of Puerto Rico, 695 F.2d 17 (1st Cir.1982). In that case, attorneys attacked the constitutionality of certain Puerto Rico statutes mandating the payment of dues to the integrated bar of Puerto Rico, the Collegio. After extensive analysis of the relevant authorities, the court held that justices of the supreme court were being sued in their adjudicative capacities as enforcers of a law in which they had no personal or institutional stake. The court stated the general rule that applied to the case as follows:
 
 
 6
 We also agree that, at least ordinarily, no "case or controversy" exists between a judge who adjudicates claims under a statute and a litigant who attacks the constitutionality of the statute. Judges sit as arbiters without a personal or institutional stake on either side of the constitutional controversy.... Almost invariably, they have played no role in the statute's enactment, they have not initiated its enforcement, and they do not even have an institutional interest in following their prior decisions (if any) concerning its constitutionality if an authoritative contrary legal determination has subsequently been made (for example, by the United States Supreme Court). In part for these reasons, one seeking to enjoin the enforcement of a statute on constitutional grounds ordinarily sues the enforcement official authorized to bring suit under the statute; that individual's institutional obligations require him to defend the statute. One typically does not sue the court or judges who are supposed to adjudicate the merits of the suit that the enforcement official may bring.
 
 
 7
 Id. at 21-22. The First Circuit in that case relied on Mendez v. Heller, 380 F.Supp. 985 (E.D.N.Y.1974), aff'd, 530 F.2d 457 (2d Cir.1976), which had held that a challenge to the constitutionality of a New York divorce statute did not lie against a state judge because the judge "is not an adversary of the plaintiff, but a judicial officer bound to decide the issue according to the law." Id. at 990.
 
 
 8
 The First Circuit declined to rest its holding directly on Article III, stating instead that it was necessary only to hold that Sec. 1983 did not encompass suits against state judges acting in their adjudicative capacity. That reasoning has been followed by the Eighth Circuit in R.W.T. v. Dalton, 712 F.2d 1225 (8th Cir.), cert. denied, 464 U.S. 1009, 104 S.Ct. 527, 78 L.Ed.2d 710 (1983). As Judge Richard Arnold's opinion in R.W.T. noted, "[i]n the typical prospective assault on the constitutionality of a state statute, the state judge is not a proper party defendant under Sec. 1983 because he has no stake in upholding the statute: he is not the plaintiff's adversary, and the complaint should be dismissed for failure to state a claim upon which relief can be granted." Id. at 1232. We agree with these decisions holding that judges adjudicating cases pursuant to state statutes may not be sued under Sec. 1983 in a suit challenging the state law.
 
 
 9
 The principle is further illustrated by the Third Circuit's decision in Georgevich v. Strauss, 772 F.2d 1078 (3d Cir.1985) (en banc), cert. denied, 475 U.S. 1028, 106 S.Ct. 1229, 89 L.Ed.2d 339 (1986), which held that a class of prisoners properly sued judges who administered the parole power. The judges had the authority to grant the relief plaintiffs sought by promulgating a rule that would provide prisoners with appropriate due process protections. Judges in that case were thus administering parole procedures rather than adjudicating a dispute between prisoners and third parties or some other state official charged with enforcing the statute. In contrast, in this case there can be no doubt that Judge Johnson acted in an adjudicative capacity by appointing a guardian for Grant upon the application of a third party. He is therefore not a proper defendant.
 
 
 10
 Our holding does not necessarily leave plaintiff without a federal injunctive or declaratory remedy. While we need make no definitive pronouncement upon this issue, Grant probably could have filed an action for declaratory judgment against her mother or ex-husband in these circumstances.[1] The constitutionality of state law has been litigated in private actions in the past. Indeed, such actions have a distinguished history. In Shelley v. Kraemer, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948), for example, the Supreme Court held in an action between two private parties, that the enforcement of racially restrictive covenants deprived the plaintiffs of their constitutional rights. See also Buchanan v. Warley, 245 U.S. 60, 38 S.Ct. 16, 62 L.Ed. 149 (1917) (declaring a city ordinance that denied black people the right to live in predominantly white neighborhoods unconstitutional in the context of a suit between two private parties).
 
 
 11
 While both Shelley and Buchanan are cases which arose on certiorari to the state courts, and Buchanan even predated the enactment of the declaratory judgment act, under today's law both of these cases in all likelihood could have been successfully maintained as declaratory judgment actions in federal court under federal question jurisdiction. While a private party may not be a "state actor" for purposes of Sec. 1983, the existence of the state statute and necessary involvement of a state judge could well provide the "state action" necessary to present a constitutional question suitable for decision in federal court. See also, Lugar v. Edmondson Oil Co., 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982).
 
 
 12
 The order of the district court denying attorneys' fees is AFFIRMED, and the cross-appeal on the merits of the judgment is DISMISSED AS MOOT.
 
 
 
 [1]
 We also express no opinion as to other issues that might arise in such litigation, including issues of abstention