United States Court of Appeals
Fifth Circuit

**F I L E D**

**July 30, 2003**

Charles R. Fulbruge III
Clerk

REVISED AUGUST 18, 2003

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 02-20412

RUTH BAUER,

Plaintiff-Appellant.

versus

THE STATE OF TEXAS; ET AL,

Defendants,

THE PRESIDING JUDGE OF PROBATE COURT
NUMBER 3 OF HARRIS COUNTY, TEXAS,

Defendant-Appellee.

Appeal from the United States District Court
for the Southern District of Texas

Before GARWOOD and HIGGINBOTHAM, Circuit Judges, and FELDMAN,
District Judge.[*]

GARWOOD, Circuit Judge:

---

[*]District Judge of the Eastern District of Louisiana,
sitting by designation.

Plaintiff Ruth Bauer (Bauer) appeals the district court's dismissal pursuant to FED R. CIV. P. 12(b)(6) of her complaint against "the Presiding Judge of Probate Court No. 3 of Harris County, Texas," Judge Rory Olsen, "in his official capacity only", seeking a declaratory judgment under 42 U.S.C. § 1983 "that Section 875 of the Texas Probate Code is unconstitutional."  We affirm.

**Factual and Procedural Background**

Bauer, the beneficiary of an approximately half-billion dollar trust, has been the subject of four guardianship proceedings before Judge Rory Olsen (Olsen), the presiding judge of Probate Court No. 3 of Harris County, some of which form the basis of this lawsuit.

Bauer's complaint states that while she was seriously ill in August of 2000, Olsen appointed her son, Douglas Bauer, temporary guardian of her person and estate pursuant to TEX. PROB. CODE § 875, attorney Darlene Payne Smith (Smith) of the law firm Crain, Caton & James, P.C. (Crain-Caton) guardian ad litem under TEX. PROB. CODE § 683, and Jim Wyckoff attorney ad litem.  On December 7, 2000, Douglas Bauer and Smith filed a motion to terminate the guardianship proceeding, and on December 13, 2000, Olsen granted the motion and entered an order terminating the guardianship.

Bauer's complaint further alleges that on December 22, 2000, she became disturbed and distressed and took a trip to relieve her stress.  On December 27, 2000, in a second guardianship proceeding initiated in Olsen's court by Douglas Bauer, Olsen again appointed

2

Douglas Bauer temporary guardian. Olsen scheduled a hearing on January 4, 2001, to determine whether Douglas Bauer should continue to serve as his mother's temporary guardian. On January 5, 2001, Olsen terminated the temporary guardianship because Douglas Bauer's lawyers had failed to serve notice of the hearing, as required by the state law authorizing creation of a temporary guardianship. TEX. PROB. CODE § 875(e). On January 11, 2001, Olsen, after an evidentiary hearing attended by Bauer's attorney, appointed Smith guardian ad litem under TEX. PROB. CODE § 683(a) (see note 4, *infra*) to investigate whether a guardian should be appointed for Bauer. Bauer alleges the evidence showed she did not need a guardian.

Bauer alleges that in late March or early April 2001, she developed pneumonia and voluntarily entered the hospital on or about April 4, 2001. Olsen asserts that the pneumonia caused Bauer to suffer hallucinations and that she has a medical history of alcoholic cirrhosis. Bauer avers that she was released in good condition on April 22, 2001. In the interim, on April 11, 2001, Smith, in her capacity as guardian ad litem for Bauer, filed a third application for the appointment of a temporary guardian for Bauer. Bauer alleges that, without notice or an opportunity to be heard, Olsen entered an order dated April 11, 2001, appointing lawyer Judy Lennox temporary guardian for her. On April 17, 2001, Bauer alleges that Smith, who remained guardian ad litem for Bauer, filed with Olsen an application for the appointment of a permanent

3

guardian.

On May 14, 2001, before action was taken on the permanent guardianship application, Bauer filed a motion to recuse Olsen, which was heard by Judge Guy Herman, Travis County Presiding Probate Judge Court #1. Herman did not rule on the motion, and instead remanded the case for random assignment because he found the April 11, 2001, temporary guardianship application was a new and separate proceeding. The case was then reassigned to Judge Mike Wood, the presiding judge of Probate Court No. 2 of Harris County.

On May 29, 2001, Bauer filed this suit (No. H-01-1781) under 42 U.S.C. § 1983 against Olsen "in his official capacity only" as the presiding judge of Probate Court No. 3 of Harris County and against "the State of Texas" seeking "a declaratory judgment that section 875 of the Texas Probate Code is unconstitutional." Bauer alleged that section 875, which pertains to the appointment of temporary guardians for incapacitated persons, violates her due process and equal protection rights because the standard of proof for appointment of a temporary guardian does not meet constitutional requirements.[1]

On June 20, 2001, Olsen moved to dismiss the suit against him pursuant to Fed R. Civ. P. 12(b)(1) and 12(b)(6), asserting that section 1983 relief against him was unavailable because he applied

---

[1]The provisions of § 875 are set out in the Appendix to this opinion.

4

the challenged statute in his adjudicatory capacity.

On July 16, 2001, Bauer voluntarily dismissed the State of Texas.

On July 20, 2001, Bauer filed a separate section 1983 action against Smith and Crain-Caton in the district court below, and on August 7, 2001, she filed a First Amended Complaint in that suit. On September 21, 2001, the district court ordered that action (No. H-01-2456) consolidated into Bauer's suit against Olsen (No. H-01-1781). On October 29, 2001, Bauer sought leave to file in the thus consolidated action a Second Amended Complaint against Smith, Crain-Caton, and Olsen.

On November 30, 2001, all pending state guardianship proceedings affecting Bauer were dismissed by Judge Wood, Smith was discharged as guardian ad litem, and Judge Wood entered an order to pay Smith from Bauer's estate appointee fees and expenses totaling $200,000.

On December 3, 2001, Bauer moved to dismiss without prejudice her suit (No. H-01-2456) against Smith and Crain-Caton, reciting that the case had been settled "pursuant to a confidential settlement agreement" dated November 26, 2001, with Smith and Crain-Caton, and submitted a proposed agreed order of dismissal, which the district court signed December 21, 2001.[2]  On December

---

[2]The order dismisses without prejudice "Civil Action No. H-01-2456 against Defendants [Smith and Crain-Caton] . . . provided that the Court retains jurisdiction for the purpose of enforcing the above described Settlement Agreement of the Parties, in its discretion upon the

5

20, 2001, Bauer moved for leave to file her "First Amended Complaint" against Olsen.[3]  This proposed complaint named as the sole defendant "Rory R. Olsen in his official capacity as the presiding judge of Probate Court No. 3 of Harris County, Texas," states that "Plaintiff seeks prospectively a declaratory judgment that certain provisions of the Texas Probate Code pertaining to guardianships are unconstitutional under the Constitution of the United States" and requests "a declaratory judgment that the above described guardianship provisions of the Texas Probate Code are unconstitutional."  This tendered pleading not only complained of Probate Code § 875, but also added a complaint as Probate Code § 683.[4]  No other provision of the Probate Code was alleged to be

_____

filing of an appropriate motion."

[3]The settlement and subsequent December 2001 dismissal of all Bauer's claims against Smith and Crain-Caton (cause No. H-01-2456), left only her claims against Olsen in cause No. H-01-1781, and in effect rendered moot her October 29, 2001, motion (in the consolidated case) to file a "Second Amended Complaint" against Smith, Crain-Caton and Olsen.  By order of February 5, 2002, the district court denied ("without prejudice to re-urging after the court has ruled on all outstanding motions") Bauer's October 29, 2001, motion for leave to file Second Amended Complaint against Smith, Crain-Caton and Olsen in the consolidated action.

[4]Section 683 provides as follows:

**"§ 683.  Court's Initiation of Guardianship Proceedings**

(a) If a court has probable cause to believe that a person domiciled or found in the county in which the court is located is an incapacitated person, and the person does not have a guardian in this state, the court shall appoint a guardian ad litem or court investigator to investigate and file an application for the appointment of a guardian of the person or estate, or both, of the person believed to be incapacitated.

6

unconstitutional.

On February 22, 2002, the district court granted Olsen's motion to dismiss under Rule 12(b)(6), not reaching the Rule 12(b)(1) motion to dismiss. The court concluded that Bauer had failed to allege an essential element of a section 1983 claim, namely that the defendant's complained of actions were taken under color of state law. The court observed that action by a state judge solely in his adjudicatory capacity does not constitute state action and that the "complaint fails to state that, other than his alleged bias, Olsen acted outside his adjudicatory capacity in making rulings against Bauer under § 875."

On February 26, 2002, the court denied without explanation Bauer's December 20, 2001, motion for leave to file a First Amended

---

(b) To establish probable cause under this section, the court may require:

(1) an information letter about the person believed to be incapacitated that is submitted by an interested person and satisfies the requirements of Section 683A of this code; or

(2) a written letter or certificate from a physician who has examined the person believed to be incapacitated that satisfies the requirements of Section 687(a) of this code, except that the letter must be dated not earlier than the 120th day before the date of the filing of an application under Subsection (a) of this section and be based on an examination the physician performed not earlier than the 120th day before that date.

(c) A court that creates a guardianship for a ward under this chapter may authorize compensation of a guardian ad litem who files an application under Subsection (a) of this section from available funds of the ward's estate. If after examining the ward's assets the court determines the ward is unable to pay for services provided by the guardian ad litem, the court may authorize compensation from the county treasury."

Complaint.

Bauer timely appeals.

## Discussion

Dismissals pursuant to Rule 12(b)(6) are appropriate where "it appears beyond doubt that the plaintiff can provide no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 78 S.Ct. 99, 102 (1957). In making this determination, the court accepts as true all allegations contained in the plaintiff's complaint and all reasonable inferences are to be drawn in favor of the plaintiff's claims. *Kaiser Aluminum & Chem. Sales Inc. v. Avondale Shipyards, Inc.,* 677 F.2d 1045, 1050 (5th Cir. 1982). Review of a Rule 12(b)(6) dismissal is *de novo. Davis v. Bayless,* 70 F.3d 367, 371 (5th Cir. 1995).

Judges enjoy absolute immunity from liability for judicial or adjudicatory acts. *Forrester v. White*, 108 S.Ct. 538, 565 (1988). Absolute judicial immunity, however, does not bar prospective relief against a judicial officer. *Pulliam v. Allen*, 104 S.Ct. 1970, 1981 (1984).

Section 1983 provides a private right of action against parties acting "under color of any statute, ordinance, regulation, custom, or usage, of any State" to redress the deprivation of rights secured by the United States Constitution or federal law. *City of St. Louis v. Praprotnik,* 108 S.Ct. 915, 923 (1988). Section 1983 is not itself a source of substantive rights; it

8

merely provides a method for vindicating already conferred federal rights. *Albright v. Oliver,* 114 S.Ct. 807, 811 (1994). To prevail on a section 1983 claim, the plaintiff must show that: 1) the offending conduct was committed by a person acting under color of state law; and 2) the conduct deprived the plaintiff of rights secured by the Constitution or federal law. *Parrat v. Taylor,* 101 S.Ct. 1908, 1909 (1981).

First, we consider whether Bauer has standing to challenge the constitutionality of these Texas's guardianship statutes through a suit against Olsen. Although Olsen has not raised the issue of standing, we may consider it *sua sponte*. *See Lang v. French*, 154 F.3d 217, 222 n.28 (5th Cir. 1998). The three elements of Article III standing are: 1) injury, 2) causation, and 3) redressability. *Okpalobi v. Foster,* 244 F.3d 405, 425 (5th Cir. 2001). Moreover, as we recently stated in *McClure v. Ashcroft*, ___ F.3d ___ (No. 02-30357, 5th Cir. June 20, 2003, slip op. 3461):

> "'Beyond the constitutional requirements, the federal judiciary has also adhered to a set of prudential principles that bear on the question of standing.' *Valley Forge Christian College [v. Americans United]*, 454 U.S. [464] at 475, 102 S.Ct. 752 [(1982)]. 'Prudential standing limitations help courts identify proper questions of judicial adjudication, and further define the judiciary's role in the separation of powers.' *Ruiz v. Estelle*, 161 F.3d 814, 829 n.22 (1998)." *Id*. at 3465.

There are no guardianship proceedings at this time. Bauer alleges she has standing because of the "loss of personal and financial rights and liberties...caused by Olsen" and argues a

9

declaratory judgment is warranted because Olsen's "past pattern of conduct demonstrates a threat that he will continue to apply unconstitutional guardianship statutes against Bauer unless declaratory relief is obtained." Bauer seeks declaratory rather than injunctive relief because of section 1983's provision, added in 1996, that injunctive relief against a judicial officer for an act or omission in his judicial capacity shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. *Tesmer v. Granholm*, 114 F. Supp. 2d 603, 605 (E.D. Mich. 2000). When the question is whether a federal court should enjoin a pending state-court proceeding, "even irreparable injury is insufficient unless it is 'both great and immediate.'" *Younger v. Harris*, 91 S.Ct. 746, 751 (1971).

A plaintiff can meet the standing requirements when suit is brought under the Declaratory Judgment Act, 28 U.S.C. § 2201-2202, by establishing "actual present harm or a significant possibility of future harm," *Peoples Rights Org. v. City of Columbus*, 152 F.3d 522, 527 (6th Cir. 1998), "even though the injury-in-fact has not yet been completed." *Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 280 (6th Cir. 1997). An actual controversy must be extant at all stages of review, not merely at the time the complaint is filed. *SEC v. Medical Comm. for Human Rights*, 92 S.Ct. 577 (1972); *United States v. Munsingwear, Inc.*, 71 S.Ct. 104 (1950). The "actual controversy" required under 28 U.S.C. § 2201(a) "is

10

identical to the meaning of 'case or controversy' for the purposes of Article III." *Lawson v. Callahan*, 111 F.3d 403, 405 (5th Cir. 1997).

In order to demonstrate that a case or controversy exists to meet the Article III standing requirement when a plaintiff is seeking injunctive or declaratory relief, a plaintiff must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future. *City of Los Angeles v. Lyons*, 103 S.Ct. 1660, 1665 (1983); *Cone Corp. v. Florida Dep't of Transp.*, 921 F.2d 1190, 1205 (11th Cir. 1991). Based on the facts alleged, there must be a substantial and continuing controversy between two adverse parties. *Emory v. Peeler*, 756 F.2d 1547, 1551-52 (11th Cir. 1985). The plaintiff must allege facts from which the continuation of the dispute may be reasonably inferred. *Id.* Additionally, the continuing controversy may not be conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather than speculative threat of future injury. *Id.*

"'Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects.'" *Lyons*, 103 S.Ct. at 1665 (quoting *O'Shea v. Littleton*, 94 S.Ct. 669 (1974)). To obtain equitable relief for past wrongs, a plaintiff must demonstrate either continuing harm or a real and immediate

11

threat of repeated injury in the future.  Similar reasoning has been applied to suits for declaratory judgments.  *Ashcroft v. Mattis*, 97 S.Ct. 1739 (1977); *Golden v. Zwickler*, 89 S.Ct. 956 (1969).

Given that Bauer acknowledges there are currently no state guardianship proceedings relating to her, that there have been no such proceedings since November 2001, and that this matter was transferred from Judge Olsen to Judge Wood, there does not exist a "substantial likelihood" and a "real and immediate" threat that Bauer will face injury from Olsen in the future.  This court has often held that plaintiffs lack standing to seek prospective relief against judges where the likelihood of future encounters is speculative. *Adams v. McIlhany*, 764 F.2d 294, 299 (5th Cir. 1985); *Society of Separationists, Inc. v. Herman*, 959 F.2d 1283 (5th Cir. 1992).    Furthermore, there is the danger that excessive superintending of state judicial functions "would constitute a form of monitoring of the operation of state court functions that is antipathetic to established principles of comity." *O'Shea v. Littleton*, 94 S.Ct. 669, 679 (1974).  Because there is no ongoing injury to Bauer and any threat of future injury is neither imminent or likely, there is not a live case or controversy for this court to resolve and a declaratory judgment would therefore be inappropriate.  Even assuming, *arguendo*, that the requirements of Article III standing in this respect are minimally met, prudential

12

standing considerations similarly dictate the impropriety of declaratory relief for those reasons.[5]

We also reject Bauer's appeal on the related ground that, due to a lack of adversity between her and Olsen as to the facial constitutionality of the statutes she challenges as facially invalid, there is no case or controversy under Article III and Olsen is not a proper party under section 1983. The case or controversy requirement of Article III of the Constitution requires a plaintiff to show that he and the defendants have adverse legal interests. *Aetna Life Ins. Co. v. Haworth*, 57 S.Ct. 461 (1937). The requirement of a justiciable controversy is not satisfied where a judge acts in his adjudicatory capacity. *Mendez v. Heller*, 530 F.2d 457, 458 (2d Cir. 1976); *Klein v. University of Kansas Medical Ctr.*, 975 F. Supp. 1408, 1413 (D. Kan. 1997). Similarly, a section 1983 due process claim is not actionable against a state judge acting purely in his adjudicative capacity because he is not a proper party in a section 1983 action challenging the constitutionality of a state statute. *Nollet v. Justices of Trial*

---

[5]It is relevant in this connection that the relief Bauer seeks is merely a declaration that § 875 (and § 683 in her proposed amended complaint) is facially unconstitutional, while the substance of what she complains of is that Olsen violated her rights in that (according to her allegations) he was biased against her and acted in the proceedings involving her from improper, ulterior motives and conspired with Smith and Crain-Caton to harm her and help them, wrongs which are essentially independent of the claimed facial defects in the two challenged Texas Probate Code sections. Moreover, no declaratory (or other) relief is sought in respect to such wrongs and, for example, no declaratory relief is sought which would declare Olsen precluded from sitting in any case involving Bauer.

13

*Court of Comm. of Mass.*, 83 F. Supp. 2d 204, 2111 (D. Mass. 2000, aff'd by *Nollet v. Justices of the Trial Court*, 248 F.3d 1127 (1st Cir. 2000, unpublished)).

In *Chancery Clerk of Chickasaw County v. Wallace*, 646 F.2d 151 (5th Cir. 1981), this court held that a plaintiff challenging the state's commitment procedures for the mentally ill must substitute state bureaucrats for judges and chancery clerks as defendants, noting "because of the judicial nature of their responsibility, the chancery clerks and judges do not have a sufficiently 'personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues on which the court so largely depends for illumination of difficult constitutional questions.'" *Id. at 160* (citing *Baker v. Carr*, 82 S.Ct. 691 (1962); *Mendez v. Heller*, 530 F.2d 457 (2d Cir. 1976) (state court judges and clerks joined as defendants in a suit challenging New York's durational residency requirement for divorce found to lack the requisite interest in defending the allegedly unconstitutional statutes)). The *Chickasaw* court concluded there was no adversity between the plaintiffs and the originally named judicial defendants, as the defendants were not the real parties in interest. Prudential standing concerns and the circumstances outlined in note 5, *supra*, likewise point in the same direction.

Bauer attempts to distinguish *Chickasaw* and other such cases, arguing this situation is different because Texas's guardianship

14

statutes give Olsen the ability to enforce, not merely adjudicate the law. Bauer relies on *Supreme Court of Virginia v. Consumers Union of U.S., Inc.,* 100 S.Ct. 1967 (1980), in which it was held that the Chief Justice of the Virginia Supreme Court was a proper party under section 1983 because the Court acted in an enforcement, rather than an adjudicatory capacity, in initiating proceedings against attorneys for violating state regulations on legal advertising.[6] Therefore, whether Olsen is a proper party under section 1983 and whether there is a case or controversy depends on whether Olsen likewise acted outside of his adjudicatory capacity.

In our analysis of all these issues, we assume *arguendo* that Bauer's Motion to Amend to add her allegations that section 683 is unconstitutional should have been granted.

Section 683 (quoted in note 4, *supra*) does not provide the guardian ad litem with the authority to exercise any dominion over the putative ward. Instead, the guardian ad litem has merely the same authority as a court investigator, which is to investigate and report back to the judge whether the evidence warrants appointment of a guardian for the putative ward. While section 683 gives judges the power to initiate the appointment of a guardian ad litem, deprivations of the ward's liberty can only result from the appointment of a guardian or of a temporary guardian under section

---

[6]The Court noted it did not decide whether the Supreme Court of Virginia was "a 'person' suable under § 1983." *Id.,* 100 S.Ct. at 1977 n.16.

875, which Bauer does not allege Olsen initiated. To succeed, a claim under section 1983 must show a deprivation of a liberty interest protected by the Fourteenth Amendment. *Moore v. Mississippi Valley State University*, 871 F.2d 545 (5th Cir. 1989). The invocation of section 683 simply to use a court investigator or a guardian ad litem to gather information involves no such deprivation of liberty and, therefore, is not actionable under section 1983 and the Fourteenth Amendment. Thus, we need not determine whether Olsen acted within his adjudicatory capacity in appointing a guardian ad litem under section 683. Instead, in considering whether Olsen acted within his adjudicative capacity, we only consider his appointment of temporary guardians under section 875 because it is a temporary guardian, in contrast to a section 683 guardian ad litem, that may be empowered to exercise authority over the ward, thereby affecting the ward's liberty interests.

Texas Probate Code § 875(a) requires that a court be "presented with substantial evidence" establishing probable cause that a temporary guardian is necessary before appointing one. Section 875(c) requires that an application for the appointment of a temporary guardian be filed no later than the end of the next business day after the appointment of a temporary guardian. Section 875(d) further mandates that the court appoint an attorney for the proposed ward if he has not already retained independent

16

counsel.  Finally, notice to the ward and a hearing are required under sections 875(e) and (f), respectively.

It has been held that, in acting pursuant to a statute allowing a county judge to involuntarily commit a minor to a substance-abuse treatment facility on the petition of parent or legal guardian, a judge was within his adjudicatory role. *Listenbee v. Reynolds*, 201 F.3d 194 (3d Cir. 2000).  As such, the court in *Listenbee* found that the judge was not a proper party in a section 1983 challenge to the statute's constitutionality. Similarly, the Ninth Circuit has held that a judge appointing a temporary guardian pursuant to an Oregon statute allowing a judge to appoint a temporary guardian without notice or a hearing, acts in his adjudicatory capacity and therefore is not a proper party in a section 1983 suit contesting the constitutionality of the statute.  *Grant v. Johnson*, 15 F.3d 146 (9th Cir. 1994).  By comparison, judicial determinations pursuant to section 875 are even more clearly within a judge's adjudicatory capacity, as this statute requires notice and a hearing, among other safeguards and limitations.

*Supreme Court of Virginia* is distinguishable principally because, unlike the disciplinary proceeding against the attorney initiated by the Virginia Supreme Court, Olsen did not initiate a temporary guardianship over Bauer.  Instead, he issued an order creating a temporary guardianship after evidence was presented to

17

him and he found sufficient cause. Although Olsen did initiate the appointment of the guardian ad litem under section 683, who petitioned after conducting an investigation for the creation of a temporary guardianship, the guardian ad litem was under no obligation to request a temporary guardianship.

Other cases cited by Bauer are similarly distinguishable. In *Sparks v. Duval Ranch Company, Inc.,* 604 F.2d 976 (5th Cir. 1979), the judge was allegedly bribed to conspire with the defendants against the plaintiffs. Bribery is not within a judge's adjudicatory capacity, and indeed is contrary to it. *Ciudadanos Unidos de San Juan v. Hidalgo County Grand Jury Comm'rs*, 622 F.2d 807 (5th Cir. 1980) involved a challenge by minorities excluded from consideration for grand jury service to grand jury selection procedures and, thus, is similarly distinguishable from the case *sub judice.* Another case cited by Bauer, *Familias Unidas v. Briscoe,* 619 F.2d 391, 396 (5th Cir. 1980), is inapposite because the defendant judge was the County Judge of Medina County, an executive as well as a judicial officer, and was sued for actions taken in his executive capacity.

Therefore, because determinations made under section 875 are within a judge's adjudicatory capacity, there is no adversity between Bauer and Olsen as to whether section 875 is facially unconstitutional. As such, there is no case or controversy under Article III and Olsen is not a proper party under section 1983.

18

Ordinarily, no case or controversy exists between a judge who adjudicates claims under a statute and a litigant who attacks the constitutionality of the statute. *In re Justices of The Supreme Court of Puerto Rico*, 695 F.2d 17, 19 (1st Cir. 1982). Section 1983 will not provide any avenue for relief against judges "acting purely in their adjudicative capacity, any more than, say, a typical state's libel law imposes liability on a postal carrier or telephone company for simply conveying a libelous message." *Id. at 22*. The court in *Puerto Rico* offered several reasons for this holding. First, "judges sit as arbiters without a personal or institutional stake on either side of the constitutional controversy." *Id. at 21.* Second, "almost invariably, they have played no role in the statute's enactment." *Id.* Third, "they have not initiated its enforcement." *Id.* Finally, "they do not even have an institutional interest in following their prior decisions (if any) concerning its constitutionality if an authoritative contrary legal determination has subsequently been made." *Id.* All of these reasons apply with equal force in the case of *sub judice*, as Olsen did not, and could not have, initiated temporary guardianship proceedings under section 875. Instead, the requirements that the judge be presented with evidence, that an application be filed, notice be given, and a hearing be held, all of which were followed here, demonstrate that a judge acts in his

adjudicatory capacity in appointing a temporary guardian.[7]

Bauer also challenges the denial of her December 20, 2001, motion to amend. However, as explained above, the therewith proposed amended complaint would have been subject to dismissal for the reasons previously stated, and the proposed amendment would hence have been futile. Accordingly, Bauer's contention in this regard presents no reversible error. Bauer's October 29, 2001, motion to amend, which sought to file an amended complaint against Smith, Crain-Caton and Olsen was mooted by her subsequent dismissal of Smith and Crain-Caton (see note 3, *supra*).

Our decision today does not foreclose Bauer or others from directly challenging the constitutionality of Texas's guardianship statutes, as it does not reach the question of whether these statutes are constitutional. Bauer did not seek to dissolve either temporary guardianship or the guardianship ad litem on the ground

---

[7]The original complaint names as defendants only "the State of Texas and the Presiding Judge of Probate Court No. 3 of Harris County, Texas" and alleges "[t]he Presiding Judge of Probate Court No. 3 of Harris County, Texas, may be served by serving the Honorable Rory R. Olsen, in his official capacity only." The proposed amended complaint names as the only defendant "Rory R. Olsen in his official capacity as the presiding judge of Probate Court No. 3 of Harris County, Texas." Olsen is never named as a defendant in his individual capacity. Assuming that the Probate Court No. 3 of Harris County is a state agency, a question might arise as to whether the suit is in effect one against a state agency and hence not within the *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441 (1908), prospective relief exception to the Eleventh Amendment. *See, e.g., Southern Christian Leadership v. Supreme Court of Louisiana*, 252 F.3d 781, 783 n.2 (5th Cir. 2001); *Landers Seed Company v. Champaign National Bank*, 15 F.3d 729, 731-32 (7th Cir. 1994); *Clark v. Clark*, 984 F.2d 272, 273 (8th Cir. 1993); *Voisin's Oyster House v. Guidry*, 799 F.2d 183, 186, 187-88 (5th Cir. 1986). However, we will not address this question as Olsen has not raised any Eleventh Amendment issue before us and it has not been addressed by the district court.

that the statutes authorizing their creation were unconstitutional. Instead, she has attempted to use a lawsuit against Olsen as a vehicle for collaterally challenging the constitutionality of Texas's guardianship laws.

## Conclusion

For the foregoing reasons, the judgment of the district court is

AFFIRMED.[8]

---

[8] With respect to several pending motions we carried with this case, this Court grants appellant's Motion to Take Judicial Notice of public court records and information that are not in dispute. *Papasan v. Allain,* 106 S.Ct. 2932 (1986). We deny appellee's Motion for Expedited Appeal, which is moot. Finally, we deny Appellee's Motion for Damages and Costs Related to Frivolous Appeal because this appeal is plainly not wholly without merit. *Atwood v. Union Carbide Corp.*, 847 F.2d 278 (5th Cir. 1988).

Appendix

Section 875 of the Texas Probate Code provides as follows.

## § 875.  Temporary Guardian–Procedure

(a) If a court is presented with substantial evidence that a person may be a minor or other incapacitated person, and the court has probable cause to believe that the person or person's estate, or both, requires the immediate appointment of a guardian, the court shall appoint a temporary guardian with limited powers as the circumstances of the case require.

(b) A person for whom a temporary guardian has been appointed may not be presumed to be incapacitated.  The person retains all rights and powers that are not specifically granted to the person's temporary guardian by court order.

(c) A sworn, written application for the appointment of a temporary guardian may be filed before the court appoints a temporary guardian.  The application must be filed not later than the end of the next business day of the court after the date of appointment of the temporary guardian.  The application must state:

(1) the name and address of the person who is the subject of the guardianship proceeding;

(2) the danger to the person or property alleged to be imminent;

(3) the type of appointment and the particular protection and assistance being requested;

(4) the facts and reasons supporting the allegations and requests;

(5) the name, address, and qualification of the proposed temporary guardian;

(6) the name, address, and interest of the applicant;
and

(7) if applicable, that the proposed temporary guardian is a private professional guardian who has

complied with the requirements of Section 697 of this code.

(d) At the earliest of the filing of an application for temporary guardianship or the appointment of a temporary guardian, the court shall appoint an attorney to represent the proposed ward in all guardianship proceedings in which independent counsel has not been retained by or on behalf of the proposed ward.

(e) On the filing of an application for temporary guardianship, the clerk shall issue notice that shall be served on the respondent, the respondent's appointed attorney, and the proposed temporary guardian named in the application, if that person is not the applicant. The notice must describe the rights of the parties and the date, time, place, purpose, and possible consequences of a hearing on the application. A copy of the application and, if applicable, a copy of the order appointing the temporary guardian must be attached to the notice.

(f)(1) A hearing shall be held not later than the 10th day after the date of the filing of the application for temporary guardianship unless the hearing date is extended as provided by Subdivision (2) of this subsection. At a hearing under this section, the respondent has the right to:

(A) receive prior notice;

(B) have representation by counsel;

(C) be present;

(D) present evidence and confront and cross-examine witnesses; and

(E) a closed hearing if requested by the respondent or the respondent's attorney.

(2) Every temporary guardianship granted before a hearing on the application required by Subdivision (1) of this subsection expires on its own terms at the conclusion of the hearing unless the respondent or the respondent's attorney consents that the order appointing the temporary guardian may be extended for a longer

period not to exceed 60 days after the date of the filing of the application for temporary guardianship.

(3) Every temporary guardianship granted before a hearing on the application required by Subdivision (1) of this subsection shall be set for hearing at the earliest possible date and takes precedence over all matters except older matters of the same character.

(4) Every temporary guardianship granted before a hearing on the application required by Subdivision (1) of this subsection must include an order that sets a certain date for hearing on the application for temporary guardianship.

(5) On one day's notice to the party who obtained a temporary guardianship before a hearing on the application required by Subdivision (1) of this subsection, the respondent or the respondent's attorney may appear and move for the dissolution or modification of the temporary guardianship. If a motion is made for dissolution or modification of the temporary guardianship, the court shall hear and determine the motion as expeditiously as the ends of justice require.

(6) If the applicant is not the proposed temporary guardian, a temporary guardianship may not be granted before a hearing on the application required by Subdivision (1) of this subsection unless the proposed temporary guardian appears in court.

(g) If at the conclusion of the hearing required by Subsection (f)(1) of this section the court determines that the applicant has established that there is substantial evidence that the person is a minor or other incapacitated person, that there is imminent danger that the physical health or safety of the respondent will be seriously impaired, or that the respondent's estate will be seriously damaged or dissipated unless immediate action is taken, the court shall appoint a temporary guardian by written order. The court shall assign to the temporary guardian only those powers and duties that are necessary to protect the respondent against the imminent danger shown. The powers and duties must be described in the order of appointment.

(h) Except as provided by Subsection (k) of this section, a temporary guardianship may not remain in

24

effect for more than 60 days.

(i) If the court appoints a temporary guardian after the hearing required by Subsection (f)(1) of this section, all court costs, including attorney's fees, may be assessed as provided in Section 665A, 665B, or 669 of this code.

(j) The court may not customarily or ordinarily appoint the Department of Protective and Regulatory Services as a temporary guardian under this section. The appointment of the department as a temporary guardian under this section should be made only as a last resort.

(k) If an application for a temporary guardianship, for the conversion of a temporary guardianship to a permanent guardianship, or for a permanent guardianship is challenged or contested, the court, on the court's own motion or on the motion of any interested party, may appoint a new temporary guardian without issuing additional citation if the court finds that the appointment is necessary to protect the proposed ward or the proposed ward's estate. A temporary guardian appointed under this subsection must qualify in the same form and manner required of a guardian under this code. The term of the temporary guardian expires at the conclusion of the hearing challenging or contesting the application or on the date a permanent guardian the court appoints for the proposed ward qualifies to serve as the ward's guardian.