

2000 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-14-2000

# Brandon E. v Reynolds

Precedential or Non-Precedential:

Docket 99-1262

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2000

Recommended Citation

"Brandon E. v Reynolds" (2000). *2000 Decisions.* Paper 9.
http://digitalcommons.law.villanova.edu/thirdcircuit_2000/9

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2000 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed January 14, 2000

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 99-1262

BRANDON E., by and through his next friend,
Robert Listenbee, Esq.; JOY E., by and through
her next friend, Robert Listenbee, Esq., JOSH R.,
by and through his next friend, Wendie Ziegler, Esq.;
individually and on behalf of themselves and all other
persons similarly situated,

      Appellants

v.

ABRAM FRANK REYNOLDS, THE HONORABLE,
Philadelphia Court of Common Pleas, Family Court
Division, on behalf of himself and all others similarly
situated

Appeal from the United States District Court
For the Eastern District of Pennsylvania
D.C. No.: 98-cv-04236
District Judge: Honorable William H. Yohn, Jr.,

Argued: November 1, 1999

Before: SCIRICA, NYGAARD and ROSENN, Circuit Judges.

(Filed January 14, 2000)

      Marsha L. Levick (Argued)
      Juvenile Law Center of Philadelphia
      801 Arch Street Sixth Floor
      Philadelphia, PA 19107

      Counsel for Appellants

          A. Taylor Williams (Argued)
          Supreme Court of Pennsylvania
          Administrative Office of PA Courts
          1515 Market Street Suite 1414
          Philadelphia, PA 19102

           Counsel for Appellee

OPINION OF THE COURT

ROSENN, Circuit Judge.

This appeal challenges the constitutionality of a state statute designed to assist parents in obtaining treatment for minors afflicted with a drug or alcohol dependency. The plaintiffs are three named minors who, on behalf of themselves and similarly situated minors, brought an action under 42 U.S.C. S 1983 challenging the constitutionality of Act 53, a Pennsylvania statute enacted in 1997.1 See 71 Pa. Cons. Stat. Ann. 1690.112a (West Supp. 1999). The Act allows a minor's parents or a legal guardian who has custody of a minor to petition the court of common pleas of the judicial district in Pennsylvania where the minor is domiciled to order the involuntary commitment of the minor child to a drug and alcohol treatment program. The defendants are county judges responsible for presiding over Act 53 cases. They are sued only in their official capacity.2 The district court dismissed the action on the ground that the judges, as "neutral

_____

1. The district court postponed action on the motions to certify both a defendant and plaintiff class pending the resolution of a motion to dismiss the complaint.

2. The defendant, Honorable Abram Frank Reynolds, is a judge on the Philadelphia Court of Common Pleas, Family Court Division, responsible for hearing Act 53 cases in Philadelphia County. The Honorable Gwendolyn Bright is a judge in the Philadelphia Court of Common Pleas, Family Court Division, and the Honorable Paul Panepinto is the Administrative Judge for the Philadelphia Court of Common Pleas, Family Court Division. The Honorable Arthur E. Grim is a judge in the Berks County Court of Common Pleas, Family Court Division, and is responsible for hearing Act 53 cases in that county.

2

adjudicators" are not the proper parties to defend the constitutionality of this statute. The plaintiff timely appealed. We affirm.

I.

Act 53 permits a parent or a guardian who has legal or physical custody of a minor to petition the court of common pleas of the jurisdictional district where the minor is domiciled for the commitment of the minor to involuntary drug and alcohol treatment services, including inpatient services, if the minor is incapable of accepting or unwilling to accept voluntary treatment. See 71 Pa. Cons. Stat. Ann. 1690.112a (West Supp. 1999). The petition must set forth sufficient facts and good reason for the commitment. See id.

Upon petition, the court assigned to hear the matter must appoint counsel for the minor. See id. The court also must order the minor who is alleged to have a drug or alcohol dependency to undergo a dependency assessment. See id. The assessment is to be performed by a psychiatrist, a licensed psychologist with training in drug and alcohol assessment, or a certified addiction counselor ("CAC"). See id. The assessment must include a recommended level of care and length of treatment. See id. Assessments completed by certified addiction counselors must be based on the Pennsylvania Department of Health approved drug and alcohol level of care criteria. See id.

When the assessment is complete, the court must hold a hearing. See id. Before ordering the minor to undergo a period of involuntary commitment the court must: (1) hear the testimony of the person(s) who performed the assessment; (2) find by clear and convincing evidence that the minor is a drug-dependent person and that the minor is incapable of accepting or unwilling to accept voluntary treatment services; and (3) find that the minor will benefit from involuntary treatment services. See id.

The father of plaintiff Brandon E. petitioned the Philadelphia Court of Common Pleas, Family Court Division, for involuntary commitment of Brandon for his alleged addiction to alcohol and marijuana. Judge Reynolds

3

held a hearing, at which time he ordered that Brandon be assessed for drug and alcohol dependence. That same day, a CAC performed the assessment at the Philadelphia Family Court using the Adolescent Problem Severity Index ("APSI").

At a subsequent hearing before Judge Reynolds, the CAC presented a written report and recommendation that advocated committing Brandon to an inpatient drug treatment program for a period of sixty to ninety days. Plaintiffs allege that to avoid involuntary commitment, Brandon elected to take part in an outpatient drug treatment program. Subsequent to the filing of the complaint, Brandon was adjudicated a delinquent child under the Juvenile Act, 42 Pa. Cons. Stat. Ann.S 6801 et seq. (West 1982), and Judge Reynolds dismissed the Act 53 petition in September 1998.

The mother of the plaintiff, Joy E., also filed an Act 53 petition in Philadelphia Family Court in June 1998. According to plaintiffs, Joy appeared at a hearing before Judge Reynolds in July 1998, at which he ordered her assessment. A CAC then performed an evaluation using the APSI. The CAC did not prepare a written report of the results. At this same hearing, Judge Reynolds ordered Joy to undergo two urine tests each week and continued the hearing until August 1998. At the August hearing, the judge again ordered twice-weekly urine tests and continued the proceedings. At a subsequent hearing in September 1998, Judge Reynolds dismissed the petition against Joy after emancipating her from the custody of her parents.

The Act 53 petition against Josh R. was filed by his mother in March 1998, in the Berks County Juvenile Court. After his assessment, Josh voluntarily agreed to enter an inpatient drug and alcohol treatment program. Since the time of that agreement, Josh has been adjudicated a dependent child under the Juvenile Act, 42 Pa. Pa. Cons. Stat. Ann. S 6301 et seq. (West 1990) and the judge suspended the Act 53 proceedings.

II.

The underlying question in these proceedings seeking a declaratory judgment is whether Act 53, which authorizes

4

county judges in Pennsylvania, on the petition of a parent or a legal guardian, to commit a minor to involuntary drug and alcohol treatment services if the minor is incapable or unwilling to accept voluntary treatment, is unconstitutional. However, the threshold and determinative question in this case is whether judges presiding over Act 53 petitions as provided by the statute are proper parties to be named as defendants to an action brought under 42 U.S.C. S 1983 attacking the Act as unconstitutional. The district court thought they were not and granted defendants' motion to dismiss. In reviewing the district court's decision to grant a motion to dismiss the action, we exercise plenary review. See Coalition to Save Our Children v. State Bd. Of Educ., 90 F.3d 752, 759 (3d Cir. 1996).

III.

The district court dismissed the plaintiffs' suit because it found that "the judges presiding over Act 53 proceedings are acting solely within their adjudicatory roles" and, therefore, are not proper parties to a suit challenging the Act's constitutionality. In this connection, the district court carefully analyzed the functions and duties of the judges in the application of Act 53 and aptly concluded that the common pleas judges were acting precisely as they do in any judicial proceeding. Specifically, the district court noted that the judges "do not have the power to initiate actions against minors" and that the Act does not "appear to delegate any administrative functions to the judges." Accordingly, the district court dismissed the suit for failure to state a claim for which relief may be granted.

On appeal, plaintiffs contest the district court's dismissal on two grounds. Plaintiffs first argue that S 1983, as amended in 1996, expressly authorizes a suit for declaratory relief against a judge, who is acting in his or her judicial capacity, and that, therefore, the defendant judges are proper parties to the instant suit even though they are acting in their capacity as neutral adjudicators. Alternatively, plaintiffs contend that even if judges acting in their capacity as "neutral adjudicators" are not amenable to suit under S 1983, Act 53 "imposes non-judicial responsibilities on the judges sufficient to otherwise bring

5

them within the scope of S 1983." In this connection, plaintiffs assert that Act 53 strips the judge of his traditional role because in ordering an evaluation of the minor his function is purely ministerial. They further charge that in ordering a drug assessment of the minor, the judge is discharging a prosecutorial or investigatory role, and that the absence of a representative of the commonwealth or county at the hearing requires the judge "to juggle both his prosecutorial and judicial roles simultaneously." We reject both of the plaintiffs' arguments.

Congress amended 42 U.S.C. S1983 in 1996 as part of the Federal Courts Improvement Act ("96 Amendments") for that year. As amended, S 1983 now provides:

> Every person who, under color of any statute . . . of any State, subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in . . . [a] suit in equity . . . except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. S 1983 (emphasis added). The italicized portion reflects the language Congress added to the statute by the `96 Amendments.

The foregoing amendatory language to S 1983 does not expressly authorize suits for declaratory relief against judges. Instead, it implicitly recognizes that declaratory relief is available in some circumstances, and then limits the availability of injunctive relief to circumstances in which declaratory relief is unavailable or inadequate. The language is not an express authorization of declaratory relief, but simply a recognition of its availability or unavailability, depending on the circumstances, which the statute does not delineate. A review of the legislative history confirms this reading of the amendment. The Senate Report accompanying the amendment suggests that the amendment's purpose was to overrule the Supreme Court's

6

decision in Pulliam v. Allen, 466 U.S. 522, 541-543 (1984) (holding that judicial immunity was not a bar to awards of attorney's fees and costs or to demands for injunctive relief), not to alter the landscape of declaratory relief. See S. Rep. No. 104-366, reprinted in 1996 U.S.C.C.A.N. 4202, 4217.

Because the `96 amendments to S 1983 were not intended to alter the availability of declaratory relief against judicial officers, determining whether the declaratory relief is available in the instant case turns on whether the judges in this case properly may be named as defendants to this S 1983 action. The seminal case on the subject is In re Justices of The Supreme Court of Puerto Rico, 695 F.2d 17 (1st Cir. 1982).

In that case, five attorney-plaintiffs sued the Puerto Rico Supreme Court and the Puerto Rico Bar association, attacking the constitutionality of statutes requiring members of the bar to support the bar association through dues payments. See id. at 19. Prior to the suit, the bar association had filed disciplinary complaints against some, but not all, of the attorney plaintiffs for non-payment of their dues. The Commonwealth's Supreme Court had determined that the bar requirements were valid. See id. When the attorney-plaintiffs filed suit against the justices, the justices immediately sought a writ of mandamus from the court of appeals ordering the district court to dismiss the complaint. See id. at 21.

In support of their request for mandamus, the justices argued that the district court lacked jurisdiction over the matter under Article III because no "case or controversy" existed between the justices and the attorneys. In this connection, the justices argued that "they and the plaintiffs possess[ed] no . . . `adverse legal interest[s],' " for the Justices' only function concerning the statutes being challenged [was] to act as neutral adjudicators rather than as administrators, enforcers, or advocates." Id. (emphasis added). Addressing this argument, the First Circuit opined that "ordinarily, no `case or controversy' exists between a judge who adjudicates claims under a statute and a litigant who attacks the constitutionality of the statute." Id. The court gave a number of reasons in support of its opinion.

7

First, "[j]udges sit as arbiters without a personal or institutional stake on either side of the constitutional controversy." Id. Second, "[a]lmost invariably, they have played no role in the statute's enactment." Id. Third, " they have not initiated its enforcement." Id. Finally, "they do not even have an institutional interest in following their prior decisions (if any) concerning its constitutionality if an authoritative contrary legal determination has subsequently been made." Id.

Nevertheless, rather than deciding the case on a constitutional basis, the Court of Appeals for the First Circuit simply held that the justices were not proper parties under S 1983.3 See id.  at 22. The First Circuit explained that because judges who are not acting in an enforcement or administrative capacity have "no stake in upholding the statute against constitutional challenge . . . S 1983 does not provide relief against . . . [them] . . . any more than, say, a typical state's libel law imposes liability on a postal carrier or telephone company for simply conveying a libelous message." Id. Therefore, the court held that naming as defendants judges who act only as neutral arbiters in a dispute fails to state a claim for which relief can be granted. See id.

Although this court has held judges amenable to suit under S 1983, its decision to do so is by no means inconsistent with the approach of the Court of Appeals for the First Circuit. In Georgevitch v. Strauss, 772 F.2d 1078 (3d Cir. 1985)(En banc), cert. denied, 475 U.S. 1028 (1986), a class of state prisoners brought a S 1983 action against Pennsylvania common pleas judges alleging a violation of the Equal Protection Clause in that they had not received the same parole procedures as other similarly situated prisoners. The judges, like the justices above, argued that they were not the proper parties to be sued because they were not enforcers of the parole statutes and therefore had

_____

3. The other courts of appeals addressing the issue have also opted not to rest their decisions on the basis of Article III. See Grant v. Johnson, 15 F.3d 146, 148 (1994); R.W.T. v. Dalton, 712 F.2d 1224, 1232–33 (8th Cir.), cert. denied, 464 U.S. 1009 (1983); Mendez v. Heller, 380 F.Supp. 985, 990 (E.D.N.Y. 1974), aff'd, 530 F.2d 437 (2d. Cir. 1976).

8

no interests adverse to the prisoners. See id. at 1087. In rejecting the judges' argument, this court expressly found that the parole statute placed the judges in the identical position as the parole board, which was clearly amenable to suit, when making parole decisions regarding classes of prisoners. See id. at 1087–88. We then cited In re Justices of the Supreme Court of Puerto Rico with approval and stated that this is not a case in which judges are sued in their judicial capacity as neutral adjudicators of disputes, but rather as enforcers of the statutes. We, therefore, found "no basis for distinguishing the role of the sentencing judges from that of the Board; therefore, there is no reason why the Board, but not the judges, may be sued on a similar challenge." Id. at 1088.

Thus, although in Georgevitch we held the judges amenable to suit under S 1983, our decision nevertheless recognized the impropriety of such suits where the judge acted as an adjudicator rather than an enforcer or administrator of a statute.

Turning to the present case, the facts reveal that the plaintiffs are suing judges who are neutral adjudicators and not enforcers or administrators. In presiding over Act 53 petitions, the judges do not initiate the proceedings against the minor. The proceedings must be undertaken by the minor's parent or legal guardian by filing a petition setting forth "sufficient facts and good reason for the commitment." See 71 Pa. Cons. Stat. Ann. S 1690.112a(a). To emphasize the informality of the proceedings and minimize their adversarial character, the petition does not require an attorney at law or a prosecuting attorney. Judges, however, are required to appoint counsel for the minor and order an assessment of his or her alleged drug or alcohol dependency. See 71 Pa. Cons. Stat. Ann.S 1690.112(b). When the assessment has been completed, the statute requires the judge to hold a hearing and make factual determinations. See 71 Pa. Cons. Stat. Ann.S 1690.112a(c). The judge must determine whether the minor is a"drug-dependent person," a mixed question of law and fact typical to the adjudicative setting. See id. The judge must also determine whether the minor is unwilling or unable to accept voluntary treatment services. See id. Finally, the

judge must determine whether the minor will benefit from involuntary treatment services. See id.

The judge's position in the Act 53 proceeding is simply not adverse to that of the minor, even though the Commonwealth or the County is not required to have counsel present. The plaintiffs' arguments to the contrary are unpersuasive. The plaintiffs first argue that because the judge must order a drug and alcohol assessment upon filing of a petition without any adjudicatory process, this demonstrates that the process is not actually adjudicatory. However, this argument that the judge must immediately order an assessment without the exercise of any adjudicatory process misreads the statute. The statute requires that a petition set forth sufficient facts and good reason for the commitment and then states that upon such petition the court shall order an assessment. See 71 Pa. Cons. Stat. Ann. S 1690.112a(a)-(b). The statute does not contemplate a rubber stamp process. Rather, the statute contemplates that prior to ordering an assessment, the judge will first ascertain whether the petition sets forth sufficient facts and good reason. Thus, the premise of the plaintiffs' first argument is flawed.

Plaintiffs' next argument is equally unpersuasive. They appear to argue that the judge's traditional role is compromised by the Act 53 process because there is no separate prosecutor or solicitor other than the parent. The lack of such a prosecutor, argue the plaintiffs, requires the judge to "juggle both his prosecutorial and judicial roles simultaneously" because the judge must undertake the "non-judicial" task of calling the assessor to testify and then revert to the role of adjudicator in determining how to weigh that testimony. Plaintiffs' argument, however, basically boils down to a challenge to the informal procedures in an Act 53 petition. That the process may be informal does not alter the position of the judges as neutral arbiters over petitions commenced by the parent or legal guardian of the minor. The Supreme Court has noted that "[s]tate judges with general jurisdiction not infrequently are called upon to settle a minor's claim," and that such an act is a judicial one in nature. Stump v. Sparkman, 435 U.S. 349, 362-363 (1978). Although the plaintiffs claim that the

10

ordering of an assessment is commensurate to "a state prosecutor ordering police surveillance of an area during the pre-indictment investigation of an alleged crime," we are not convinced that the analogy accurately characterizes the role of the judges under Act 53.

For the reasons stated by the Court of Appeals for the First Circuit, we too hold it unnecessary to decide the role of the judges under Act 53 on a constitutional basis. Because the judges presiding over Act 53 proceedings are acting in their capacity as neutral adjudicators, the district court committed no error in dismissing the suit for failure to state a claim for which relief can be granted.

IV.

For the foregoing reasons, the order of the district court granting dismissal under Federal Rule of Civil Procedure 12(b)(6) will be affirmed.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit

11