RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 22a0073p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

KEVIN LINDKE,

*Plaintiff-Appellant*,

*v.*

JOHN D. TOMLINSON and MAT KING, in their official
capacities,

*Defendants-Appellees*.

No. 21-2612

———————————

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:20-cv-12857—Sean F. Cox, Chief District Judge.

Argued: January 26, 2022

Decided and Filed: April 12, 2022

Before: GRIFFIN, DONALD, and BUSH, Circuit Judges.

———————————

## COUNSEL

**ARGUED:** Philip L. Ellison, OUTSIDE LEGAL COUNSEL PLC, Hemlock, Michigan, for
Appellant. Todd J. Shoudy, FLETCHER FEALKO SHOUDY & FRANCIS, PC, Port Huron,
Michigan, for Appellees. **ON BRIEF:** Philip L. Ellison, OUTSIDE LEGAL COUNSEL PLC,
Hemlock, Michigan, for Appellant. Todd J. Shoudy, FLETCHER FEALKO SHOUDY &
FRANCIS, PC, Port Huron, Michigan, for Appellees.

———————————

**OPINION**

———————————

GRIFFIN, Circuit Judge.

Plaintiff Kevin Lindke and his ex-girlfriend, Ami Moeller, engaged in a contentious child custody dispute, during which Moeller obtained a domestic personal protection order (PPO) against Lindke. After she sued Lindke for violating that PPO, defendant Judge John Tomlinson, a Michigan probate court judge, agreed and ruled in her favor. Rather than appeal that determination in Michigan state court, Lindke sued Judge Tomlinson and county sheriff Mat King in federal court under 42 U.S.C. § 1983, seeking to enjoin enforcement of Michigan's domestic PPO statute. The district court dismissed the case, concluding that no subject-matter jurisdiction existed in the case against Judge Tomlinson and that Lindke failed to state a claim against Sheriff King. We agree and affirm.

I.

This case stems from a "bitter custody dispute" between Lindke and Moeller that led to Lindke's "personal Internet crusade" against Moeller. *See TT v. KL*, 965 N.W.2d 101, 104 (Mich. Ct. App. 2020). The two are the parents of a minor child, whom we will refer to as OGL. In September 2015, Moeller filed a complaint in St. Clair County Circuit Court seeking to resolve custody and parenting time for OGL. During that litigation, Moeller sought and obtained a PPO against Lindke by alleging that Lindke beat her repeatedly, threatened her, and sent nude photos of her to her family, friends, and coworkers. Lindke violated that PPO twice, and, when it expired, Moeller sought a second PPO, which alleged that Lindke continued to harass her online. Judge Tomlinson granted the second PPO on March 31, 2016, barring Lindke from, among other things, "sending mail or other communications" to Moeller. Eventually, Moeller obtained sole legal and physical custody of OGL.

In March 2019, Moeller sued Lindke in state court, alleging that his "continued harassment . . . on social media" violated the March 2016 PPO. Specifically, she alleged that Lindke was "attempting to communicate" with her on Facebook by "speaking directly to [her]

and about [her]" and "tagging [her] in comments."  Moeller also alleged that Lindke had posted old photos of her and an order from their custody case, which Lindke says was because Moeller had allowed OGL to have regular contact with a sex offender.  Judge Tomlinson found that most of Lindke's online activity was constitutionally protected speech but that his act of "tagging" Moeller in a specific Facebook post violated the PPO.

Rather than appeal that decision to the Michigan Court of Appeals, Lindke sued Judge Tomlinson and Sheriff King in federal court.  He contended that Michigan's domestic PPO statute, Mich. Comp. Laws § 600.2950, violated his First and Fourteenth Amendment rights and was, thus, unconstitutional.  He requested that the court issue declaratory relief and enjoin Judge Tomlinson and Sheriff King from enforcing the statute against him.

This is not the first time Lindke has sued a state-court judge in federal court.  He previously challenged another state-court judge's adjudication under Michigan's non-domestic PPO statute, Mich. Comp. Laws § 600.2950a, in federal court.  *See Lindke v. Lane*, 523 F. Supp. 3d 940, 942 (E.D. Mich. 2021).  After a thorough analysis, *Lane* concluded that the judge's role under the non-domestic PPO statute was to act "in an adjudicatory capacity when she construed and applied" the statute in the underlying action.  *Id*. at 953.  The judge's interests were not adverse to Lindke and thus his claims "present[ed] no justiciable Article III case or controversy," depriving the court of subject-matter jurisdiction.  *Id*.

The district court here found the analysis in *Lane* "instructive."  *Lindke v. Tomlinson*, No. 20-cv-12857, 2021 WL 2434120, at *2 (E.D. Mich. June 15, 2021).  Relying on *Lane*, the court dismissed Lindke's suit against Judge Tomlinson because "there is no Article III subject matter jurisdiction to hear this case."  *Id*.  And the district court noted that Lindke's complaint lacked specific allegations about how Sheriff King allegedly violated Lindke's constitutional rights, so Lindke failed to state a claim against Sheriff King under Fed. R. Civ. P. 12(b)(6).  *Id*. at *3.

Lindke now appeals.

## II.

Lindke first argues that we have subject-matter jurisdiction over his claims for declaratory relief against Judge Tomlinson because Judge Tomlinson is a proper party to this case. We disagree.

"We review *de novo* the district court's decision to dismiss this case for lack of subject matter jurisdiction under Rule 12(b)(1)." *Cartwright v. Garner*, 751 F.3d 752, 760 (6th Cir. 2014). To the extent that the district court made factual findings in making its determinations, we review those findings for clear error while reviewing the application of the law to those facts *de novo. Id.*[1]

Federal law recognizes that litigants, in some circumstances, may obtain declaratory relief against judicial officers acting in their official capacity. 42 U.S.C. § 1983 states, in pertinent part:

> Every person who, under color of any statute . . . of any State, . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in . . . [a] suit in equity . . . *except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.*

(Emphasis added). While this language does not expressly authorize declaratory relief against judges, it is a "recognition of its availability or unavailability, depending on the circumstances, which the statute does not delineate." *Brandon E. ex rel Listenbee v. Reynolds*, 201 F.3d 194, 198 (3d Cir. 2000). Because of this, determining whether declaratory relief is available against a

---

[1]"Rule 12(b)(1) motions to dismiss for lack of subject-matter jurisdiction generally come in two varieties: a facial attack or a factual attack." *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). "A facial attack challenges subject matter jurisdiction without disputing the facts alleged in the complaint and requires the court to treat the allegations of the complaint as true. A factual challenge attacks the factual allegations underlying the assertion of jurisdiction, either through the filing of an answer or otherwise presenting competing facts." 5B C. Wright & A. Miller, Federal Practice and Procedure § 1350 (3d ed. April 2021). Though the parties dispute whether the motion to dismiss was a facial attack or a factual attack on jurisdiction, that distinction matters little here. No party challenges the factual predicate for the district court's decision—that Judge Tomlinson was a state-court judge who rendered a decision under the PPO statute at issue. Whether he is a sufficiently adverse party to Lindke, thereby creating Article III jurisdiction, is purely a question of law.

judge turns on "whether the judges in this case properly may be named as defendants to this § 1983 action." *Id.*

In this case, the issue is whether a live case or controversy exists under Article III. "Article III of the Constitution affords federal courts the power to resolve only 'actual controversies arising between adverse litigants.'" *Whole Woman's Health v. Jackson*, 142 S. Ct. 522, 532 (2021) (quoting *Muskrat v. United States*, 219 U.S. 346, 361 (1911)). "Where there is no real, substantial controversy between parties having adverse legal interests, there is no case or controversy in the constitutional sense." *Ahmed v. Univ. of Toledo*, 822 F.2d 26, 27 (6th Cir. 1987) (citation and quotation marks omitted).

The seminal case on this issue is *In re Justices of Supreme Ct. of Puerto Rico*, 695 F.2d 17 (1st Cir. 1982). In that case, a group of attorneys sued the Justices of the Puerto Rico Supreme Court in federal court over a dispute involving the Puerto Rico Bar Association Foundation. *Id.* at 18. The First Circuit held that the suit should be dismissed. The court first looked to the statutes at issue, which required attorneys in the bar association to pay dues and otherwise support the association financially. *Id.* at 19. The opinion, written by then-Judge Stephen G. Breyer, concluded that "the role of the Justices with respect to these statutes is adjudicative." *Id.* at 21. "In deciding cases based on such complaints, the Justices act as they would in any other case based upon a Commonwealth statute: they sit as adjudicators, finding facts and determining law in a neutral and impartial judicial fashion." *Id.* In such circumstances, ordinarily no "case or controversy" exists:

> Judges sit as arbiters without a personal or institutional stake on either side of the constitutional controversy. They are sworn to uphold the Constitution of the United States. They will consider and decide a claim that a state or Commonwealth statute violates the federal Constitution without any interest beyond the merits of the case. Almost invariably, they have played no role in the statute's enactment, they have not initiated its enforcement, and they do not even have an institutional interest in following their prior decisions (if any) concerning its constitutionality if an authoritative contrary legal determination has subsequently been made (for example, by the United States Supreme Court).

*Id.* But the First Circuit declined to rest its conclusion directly on Article III, concluding instead that the plaintiffs had failed to state a claim under Rule 12(b)(6) because "§ 1983 does not

provide relief against judges acting purely in their adjudicative capacity, any more than, say, a typical state's libel law imposes liability on a postal carrier or telephone company for simply conveying a libelous message." *Id.* at 22–23.

According to *In re Justices*, the threshold consideration is whether the judge is acting, under the statute at issue, in an adjudicatory capacity or as an enforcer or administrator. A more recent case exploring this distinction is *Allen v. DeBello*, 861 F.3d 433 (3d Cir. 2017). *Allen* examined whether the plaintiffs could challenge a New Jersey custody statute by suing state-court judges who had applied that statute; in doing so, the court compared two cases that reached opposite results. *Id.* at 440. In *Georgevich v. Strauss*, 772 F.2d 1078 (3d Cir. 1985), the court held that judges were proper parties to a § 1983 challenge because the statute at issue "divide[d] the authority to make parole decisions between the sentencing judges and the [Parole] Board." *Allen,* 861 F.3d at 440–41 (quoting *Georgevich*, 772 F.2d at 1088). Because the judges administered the parole statute in the same way as the Board, "there was 'no basis for distinguishing the role of the sentencing judges from that of the Board' and 'no reason why the Board, but not the judges, may be sued on a similar challenge.'" *Id.* at 441 (quoting *Georgevich*, 772 F.2d at 1088). Conversely, in *Brandon E. ex rel Listenbee v. Reynolds*, the statute at issue authorized judges to commit minors to involuntary drug and alcohol treatment programs; these judges were "neutral adjudicators, not enforcers or administrators of the statute." *Id.* (citing *Reynolds*, 201 F.3d at 199). The judges did not initiate the proceedings and were required to appoint independent counsel for the minors; thus the "judge's position in the . . . proceeding is simply not adverse to that of the minor." *Id.* (quoting *Reynolds*, 201 F.2d at 199). Therefore, *Allen* explained that the question was whether the state-court judges were "neutral arbiters" of the statute as in *Reynolds*, or if they had "enough latitude under the statute and policies that they become enforcers" as in *Georgevich*. *Id.* After examining other circuits' caselaw and the statute at issue, *Allen* concluded that the judicial defendants had acted in an adjudicatory capacity and thus were not proper defendants because they did not initiate the action, could not administer the statute, and had not promulgated the statutory standards to which the plaintiffs had objected. *Id.* at 442. But it too declined to rest its decision on Article III grounds. *Id.* at 443 n.49.

Our sister circuits largely agree with *In re Justices* and *Allen*. The Eighth Circuit has noted that after *In re Justices*, a judge is not a proper defendant "because he has no stake in upholding the statute: he is not the plaintiff's adversary, and the complaint should be dismissed for failure to state a claim upon which relief can be granted." *R.W.T. v. Dalton*, 712 F.2d 1225, 1232 (8th Cir. 1983), *abrogated in part on other grounds by Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827 (1990). The Ninth Circuit similarly agrees that "judges adjudicating cases pursuant to state statutes may not be sued under § 1983 in a suit challenging the state law." *Grant v. Johnson*, 15 F.3d 146, 148 (9th Cir. 1994). Other courts have reached the same conclusion but, in doing so, have used language with broader constitutional implications. In *Mendez v. Heller*, 530 F.2d 457 (2d Cir. 1976), the Second Circuit held that the plaintiff's suit against the judicial defendant did "not present the honest and actual antagonistic assertion of rights indispensible [sic] to adjudication of constitutional questions . . . ." *Id*. at 460 (quotation marks and internal citations omitted). Similarly, the Fifth Circuit has determined that "due to a lack of adversity between [the plaintiff] and [the judicial defendant] as to the facial constitutionality of the statutes she challenges as facially invalid, there is no case or controversy under Article III and [the judicial defendant] is not a proper party under section 1983." *Bauer v. Texas*, 341 F.3d 352, 359 (5th Cir. 2003).

We find this caselaw instructive. Our circuit has not formally "staked out our own position" on this issue, *McNeil v. Cmty. Prob. Servs., LLC*, 945 F.3d 991, 996–97 (6th Cir. 2019), but we have favorably cited *In re Justices* in at least one unpublished opinion, *see Cooper v. Rapp*, 702 F. App'x 328, 333–34 (6th Cir. 2017). Today, we stake out our position: we agree that no case or controversy exists between a state-court judge who has acted in an adjudicatory capacity under a state statute and a litigant who is attacking the constitutionality of that statute.

When applying that caselaw here, we must answer two questions. First, what role does the Michigan domestic PPO statute confer upon Judge Tomlinson? If Judge Tomlinson acted as an enforcer or administrator of the statute, he may be a proper defendant to this action. If, however, he acted as an adjudicator of the statute, then we must proceed to the second question: does that lack of a case or controversy deprive the court of subject-matter jurisdiction as the

district court concluded? Or, instead, does it mean that Lindke fails to state a claim against Judge Tomlinson under Rule 12(b)(6) as *In re Justices* and *Allen* concluded?

We begin with the statute at issue, Mich. Comp. Laws § 600.2950, which allows an individual to petition for a personal protection order against various individuals, including, as in this case, "an individual with whom he or she has had a child in common." § 600.2950(1). Broadly speaking, the petitioner may request a PPO to prohibit the target individual from contacting or interacting with the petitioner or from engaging in "[a]ny other specific act or conduct that imposes upon or interferes with personal liberty or that causes a reasonable apprehension of violence." *See* § 600.2950(1)(a)–(*l*). The statute also directs that, "if the court determines that there is reasonable cause to believe that the individual to be restrained or enjoined may commit 1 or more of the acts listed in subsection (1)" the court "shall issue a personal protection order under this section." § 600.2950(4). In determining whether such reasonable cause exists, the court must consider evidence offered in support of the PPO or whether the individual has committed one of the enumerated acts listed in subsection (1). *Id.*

As with the statutes at issue in *In re Justices* and *Allen*, the role of a judge under Michigan's PPO statute is adjudicative. First, the judge does not initiate the underlying action, a private party does. *See Allen*, 861 F.3d at 442; *Reynolds*, 201 F.3d at 199. Instead, the judge evaluates the petitioner's request for a PPO. He must then determine if "reasonable cause" exists to grant the PPO, and if so, the judge must issue the PPO. These are purely adjudicative grounds—the judge simply decides the questions at issue. And after the PPO is entered, the judge is not responsible for its enforcement. That renders the PPO statute distinct from the rare case, such as *Georgevich*, in which a judge is an "enforcer" of a particular statute. "Where a suit challenges 'statutes related to the judicial process or statutes previously enforced by the particular judge against the plaintiff,' judges are proper parties." *Georgevich*, 772 F.2d at 1088 (quoting *In re Justices*, 695 F.2d at 23). *See also Sup. Ct. of Va. v. Consumers Union of the U. S., Inc.*, 446 U.S. 719, 736 (1980) (holding that judges were proper defendants because they promulgated and adopted certain court rules and were responsible for their enforcement). But here, the PPO statute merely directs the adjudicating judge to make certain findings and issue a PPO if necessary. Therefore, like the First Circuit stated in *In re Justices*, judges act "as they

would in any other case based upon a [state] statute: they sit as adjudicators, finding facts and determining law in a neutral and impartial judicial fashion." 695 F.2d at 21. *See also Nollet v. Justices of the Trial Ct. of the Commonwealth of Mass*, 83 F. Supp. 2d 204, 211 (D. Mass. 2000) (holding that judges who have latitude to fashion and enter a restraining order are not proper defendants because they are acting in a purely adjudicatory role). For these reasons, Judge Tomlinson's role in adjudicating § 600.2950 was purely adjudicative. Consequently, there is no case or controversy between him and Lindke.

So what effect does this have on our jurisdiction to hear the case? Most courts to address this issue have decided it on non-jurisdictional grounds: because no case or controversy exists, the plaintiff fails to state a claim under Rule 12(b)(6). *See In re Justices*, 695 F.2d at 22–23; *Allen*, 861 F.3d at 443 n.49. While the parties here have contended, and the district court decided, that the lack of adversity is a jurisdictional issue, we could follow the lead of those cases and affirm the district court on Rule 12(b)(6), not Rule 12(b)(1), grounds. *See Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 569 (6th Cir. 2001) ("[W]e may affirm on any grounds supported by the record, even if different from the grounds relied on by the district court.").

However, we conclude that the better approach is to decide this case on jurisdictional grounds. First, a lack of adversity—and thus a lack of a case or controversy—has obvious constitutional and jurisdictional implications. "If there is no case or controversy, this court lacks subject matter jurisdiction to hear this appeal . . . ." *Michigan v. Meese*, 853 F.2d 395, 397 (6th Cir. 1988). *See also Ahmed*, 822 F.2d at 27. Second, we have an independent obligation in every case to ensure that subject-matter jurisdiction exists. *See Plains Com. Bank v. Long Family Land & Cattle Co.*, 554 U.S. 316, 324 (2008). "'Without jurisdiction the court cannot proceed at all in any cause'; it may not assume jurisdiction for the purpose of deciding the merits of the case." *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998)). Consequently, if there is no case or controversy, we may not proceed to the merits of a plaintiff's claim. Yet, if we were to decide the case on Rule 12(b)(6) grounds, we would run afoul of this principle by sidestepping the jurisdictional issues. The district court in *Lane* relied on this very point when it premised its decision on jurisdictional grounds. *See* 523 F. Supp. 3d at 953 ("[A] federal court

may not assume that it has Article III jurisdiction and then proceed to resolve the merits of a dispute. Given these settled rules, the Court does not believe it is appropriate to treat a jurisdiction-negating lack of adversity as a merits issue, and the Court declines to follow the cases that have done so." (internal citation omitted)). In our view, *Lane* did not blaze a new trail by doing so—several of the opinions addressing this issue have implied that a lack of adversity has Article III implications. *See Bauer*, 341 F.3d at 359 ("The requirement of a justiciable controversy is not satisfied where a judge acts in his adjudicatory capacity."); *Mendez*, 530 F.2d at 460 ("[T]his case does not present the honest and actual antagonistic assertion of rights, indispensible [sic] to adjudication of constitutional questions . . . ." (quotation marks and citations omitted)). *Lane* correctly stated and applied the law in reaching its conclusion. And the Supreme Court appears to agree. In *Whole Woman's Health*, the Court explained that state-court judges adjudicating claims under the Texas Heartbeat Act, S.B. 8, were not adverse to those litigants challenging the law. 142 S.Ct. at 532. Echoing *In re Justices*, the Court reiterated that, under Article III, "'no case or controversy' exists 'between a judge who adjudicates claims under a statute and a litigant who attacks the constitutionality of the statute.'" *Id.* (quoting *Pulliam v. Allen*, 466 U.S. 522, 538 n.18 (1984)).

We do not share *In re Justices*'s reticence to decide the issue on constitutional grounds. While we typically avoid constitutional questions, the canon of constitutional avoidance is not "a method of adjudicating constitutional questions by other means." *Clark v. Martinez*, 543 U.S. 371, 381 (2005). Rather, it is a tool of statutory interpretation, applicable "only when, after the application of ordinary textual analysis, the statute is found to be susceptible of more than one construction; and the canon functions as a means of choosing between them." *Id.* at 385 (emphasis omitted). It does not apply in cases that fall outside the court's jurisdiction. *See Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 346–47 (1936) (Brandeis, J., concurring) (noting that the Court typically does not rule on constitutional questions if there is another ground to decide the case, but that this applies only "in the cases confessedly within [the Court's] jurisdiction"). Here, we are not interpreting a statute; we are determining the threshold constitutional issue of whether we have subject-matter jurisdiction to hear the case.

In sum, we hold that a federal court lacks subject-matter jurisdiction over a challenge to a state statute brought under § 1983 against a state-court judge when, in the underlying action, the judge merely acted in an adjudicatory capacity to construe and apply the statute. The parties are not adverse to one another, so there is no case or controversy. And if there is no case or controversy, there is no subject-matter jurisdiction. In this case, Judge Tomlinson was responsible solely for determining whether, under § 600.2950, Lindke had violated the PPO. His interests are not adverse to Lindke's. Therefore, we agree with the district court that we lack subject-matter jurisdiction over Lindke's claims.[2]

## III.

Lindke also argues that the district court erred in dismissing his claims against Sheriff King for his failure to state a claim. We disagree.

The district court's ruling as to Sheriff King was premised on Rule 12(b)(6), the failure to state a claim upon which relief can be granted. We review that decision de novo. *Middlebrooks v. Parker*, 15 F.4th 784, 789 (6th Cir. 2021). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (quotation marks omitted)). "This plausibility standard requires the plaintiff to plead 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678).

---

[2]On appeal, Lindke repeatedly asserted that, if not for Judge Tomlinson, who should he sue? Rather than seek review in federal court, we note that he could have appealed Judge Tomlinson's decision to the Michigan Court of Appeals. Indeed, he did so in another case involving another PPO issued by another judge, resulting in a published opinion by the Michigan Court of Appeals holding that the PPO was too broad. *See TT*, 965 N.W.2d at 121.

Lindke's counsel claimed that Lindke sued Judge Tomlinson in federal court because of his belief that all First-Amendment arguments had been waived in the underlying proceeding. As a result, he argued that the only review available to him was in federal court because Michigan state courts would decline to review his claims. Yet the plaintiff in *Mendez* presented a similar argument and the Second Circuit rejected it: "We are unwilling, nor are we constitutionally able, to speculate that this would be the response of the State courts." *Mendez*, 530 F.2d at 459. We too cannot speculate as to how the Michigan state courts would resolve the waiver question, and, as in *Mendez*, such speculation is not pertinent to whether subject-matter jurisdiction exists.

Lindke's complaint contained the following allegations against Sheriff King:

69. The Michigan domestic PPO statute, as authoritatively construed by Defendants JOHN D. TOMLINSON and MAT KING, is a law existing and being utilized, as effectuated on June 16, 2020 pursuant to its authoritative construction, in violation of the First Amendment to the United States Constitution.

* * *

75. Defendant MAT KING further effectuated the unconstitutional Michigan domestic PPO statute, as authoritatively construed, by enforcing and/or attempting to enforce the unconstitutional orders of the St Clair County Circuit Court premised on the Michigan domestic PPO statute, as authoritatively construed, when knowing or had reason to know that such action against First Amendment protected speech is expressly unconstitutional.

* * *

76. Defendant MAT KING failed to halt or failed to terminate the effectuation of the unconstitutional Michigan domestic PPO statute, as authoritatively construed, and instead, contrary to the protections of the First Amendment, did seek to, has attempt[ed] to, and continues to enforce the unconstitutional Michigan domestic PPO statute, as authoritatively construed.

We agree with the district court that these allegations cannot survive a motion to dismiss. Even construing these allegations in the light most favorable to Lindke, his claims are "naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (quotation marks and citation omitted). The complaint alleges merely that Sheriff King "effectuated" the PPO statute by "enforcing and/or attempting to enforce" and "fail[ing] to terminate" Judge Tomlinson's orders. Nowhere does it factually describe the actions Sheriff King took to enforce the order. The allegations are purely conclusory. Such "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. *See also Boxill v. O'Grady*, 935 F.3d 510, 518–19 (6th Cir. 2019) (holding that a plaintiff failed to state a claim because she did not offer "facts specific" to the defendants, relying instead on "broad, conclusory allegations").

On appeal, Lindke tries to inject new facts into the record, while acknowledging that "the exact additional actions of Sheriff King are not well known to Lindke." He asserts that Sheriff King entered the PPO into Michigan's Law Enforcement Information Network (LEIN); he contends that this is analogous to the circumstances in *McNeil*, where we concluded a plaintiff's

claim against a sheriff survived a motion to dismiss because Tennessee law required county sheriffs to hold probationers in jail. *See McNeil*, 945 F.3d at 995. It is true that § 600.2950(10) requires a court to "designate a law enforcement agency that is responsible for entering a personal protection order into the law enforcement information network . . . ." The March 2016 PPO indeed designates the St. Clair County Sheriff's Department. But as noted by the district court, Lindke's complaint does not allege that Sheriff King entered the PPO into LEIN. *See Tomlinson*, 2021 WL 2434120, at *3 n.1. He also has not explained how entering a PPO into LEIN is analogous to keeping probationers in jail. *See id*. at *3 n.2. In that absence, we conclude that *McNeil* is distinguishable. There, the plaintiffs' complaint explicitly noted that the "county and sheriff . . . detain[ed] them after arrest until they pay bail." *McNeil*, 945 F.3d at 993. The Michigan LEIN system is used to collect, protect, and disseminate information, and entering any information in that system is a far cry from a statutory responsibility to detain someone in jail. *See, e.g.,* Mich. Comp. Laws § 28.214.

In sum, we hold that Lindke's complaint failed to state a claim against Sheriff King upon which relief could be granted. Therefore, the district court properly granted the motion to dismiss under Rule 12(b)(6).

IV.

For these reasons, we affirm the judgment of the district court.